**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: HONEST MARKETING LITIGATION | Civil Action No. 16-cv-01125-VM |

**MEMORANDUM OF LAW IN SUPPORT OF UNCONTESTED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

Page No.

Table Of Authorities ................................................................................................ iii

I.      Introduction................................................................................................ 1

II.     Background Of The Actions ....................................................................... 5

III.    Summary Of The Settlement ..................................................................... 7

IV.     Standards For Approval Of A Class Action Settlement ............................ 13

V.      The Court Should Grant Preliminary
        Approval To The Settlement Agreement .................................................. 15

        A.    The Action Is Complex And Will Be Expensive And Lengthy.......................... 15

        B.    The Reaction Of The Class Will Likely Be Positive. ........................................ 16

        C.    The Current Stage Of The Instant Litigation And
              the Discovery That Has Occurred Favor    Preliminary Approval. ..................... 17

        D.    Plaintiffs Face Substantial Hurdles In Establishing Liability. .............................. 17

        E.    Factors Related To Difficulties In Proving Damages,
              Maintaining The Class Action Through Trial, And The
              Ability Of Defendant To Pay A Judgment Are The Only Factors
              That Do Not Heavily Weigh In Favor Of Approving The Proposed Class
              Settlement. ............................................................................................. 18

        F.    The Settlement Amounts Are Reasonable In
              Light Of The Best Possible Recovery And In
              Light Of All The Attendant Risks Of Litigation.................................................... 18

VI.     The Court Should Conditionally Certify The Class.......................................... 20

        A.    The Class Satisfies Rule 23(A). ......................................................................... 21

              1.    The Class Is So Numerous That
                    Joinder Of All Members Is Impracticable. ............................................ 21

              2.    There Are Questions Of Law Or Fact Common To The Class................ 21

              3.    Plaintiffs' Claims Are Typical Of The Claims Of The Class. ................. 23

       4.     Plaintiffs Will Fairly And Adequately
             Protect The Interests Of The Class. ............................................................ 24

  B.    The Class Satisfies Rule 23(B)(3).............................................................................. 25

      1.     Common Questions Predominate Over Individual Issues. ....................... 25

      2.     A Class Action Is A Fair And Efficient
           Method For Adjudicating This Controversy............................................. 26

VII.   Plaintiffs' Counsel Should Be Appointed As Class Counsel............................................ 27

VIII.  The Proposed Class Notice Is Appropriate ...................................................................... 28

IX.    Conclusion ....................................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997)...................................................................................................... 25

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
   133 S. Ct. 1184 (2013)................................................................................................ 23

*Ayzelman v. Statewide Credit Services Corp.*,
   238 F.R.D. 358 (E.D.N.Y. 2006).............................................................................. 20

*Berland v. Mack*,
   48 F.R.D. 121 (S.D.N.Y. 1969)................................................................................ 29

*Brooklyn Ctr. for Independence of the Disabled v. Bloomberg*,
   No. 11-6690, 2012 WL 5438849 (S.D.N.Y. Nov. 7, 2012) ..................................... 24

*Cagan v. Anchor Sav. Bank FSB*,
   No. 88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)........................................ 19

*Chambery v. Tuxedo Junction, Inc.*,
   No. 12-6539, 2014 WL 3725157 (W.D.N.Y. July 25, 2014)................................... 19

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ..................................................................................... 15

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ....................................................................................... 21

*County of Suffolk v. Long Island Lighting Co.*,
   907 F.2d 1295 (2d Cir. 1990) ................................................................................... 15

*D'Alauro v. GC Services Ltd. P'ship*,
   168 F.R.D. 451 (E.D.N.Y. 1996).............................................................................. 23

*Danieli v. IBM*,
   No. 08-3688, 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009) ................................... 14

*Davis v. J.P. Morgan Chase & Co.*,
   775 F. Supp. 2d 601 (W.D.N.Y. 2011)..................................................................... 14

*deMunecas v. Bold Food*, LLC,
   No. 09-00440, 2010 WL 2399345 (S.D.N.Y. Apr. 19, 2010).................................. 27

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ..................................................................................... 20

{00285678 }

*Dornberger v. Metro. Life Ins. Co.*,
    203 F.R.D. 118 (S.D.N.Y. 2001) ................................................................... 29

*Dura–Bilt Corp. v. Chase Manhattan Corp.*,
    89 F.R.D. 87 (S.D.N.Y. 1981) ...................................................................... 23

*Ebin v. Kangadis Food, Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) ............................................................ 22, 24

*Guido v. L'Oreal, USA, Inc.*,
    No. 11-1067, 2013 WL 3353857 (C.D. Cal. July 1, 2013) ....................... 22

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................... 13

*In re "Agent Orange" Prod. Liab. Litig.*,
    611 F. Supp. 1396 (E.D.N.Y. 1985) ............................................................ 20

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) .............................................. 15, 17, 18

*In re Currency Conversion Fee Antitrust Litig.*,
    No. 01 MDL 1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ............... 17

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    No. 05-10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................... 15

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................. 18

*In re MetLife Demutualization Litig.*,
    262 F.R.D. 205 (E.D.N.Y. 2009) ................................................................. 30

*In re Michael Milken & Assocs. Sec. Lit.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ................................................................... 18

*In re Nasdaq Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y.1997) .................................................................... 14

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................. 17

*In re Platinum and Palladium Commodities Litig.*,
    No. 10-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ...................... 29

*In re Prudential Securities Inc. Ltd. Partnerships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................. 28

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015)................................................................. 22, 23 27

*In re U.S. Foodservice Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013) ..................................................................... 22, 27

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ............................................................................ 25

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007).......................................................................... 29

*Jermyn v. Best Buy Stores, L.P.*,
    256 F.R.D 418 (S.D.N.Y. 2009).......................................................................... 26

*Jermyn v. Best Buy Stores, L.P.*,
    No. 08-00214, 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010)................................. 29

*Makaeff v. Trump Univ., LLC*,
    No. 10-9402014, 2014 WL 688164 (S.D. Cal. Feb. 21, 2014) ........................... 26

*Marcus v. AT&T*,
    138 F.3d 46 (2d Cir. 1998) ................................................................................ 25

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) .............................................................................. 21

*Martens v. Smith Barney, Inc.*,
    181 F.R.D. 243 (S.D.N.Y. 1998)......................................................................... 17

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................................ 19

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) .............................................................................. 19

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    85 N.Y.2d 20 (N.Y. 1995)................................................................................... 26

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007)............................................................... 16

*Plummer v. Chemical Bank*,
    668 F.2d 654 (2d Cir. 1982) .............................................................................. 17

*Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006)........................................................................... 20

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ................................................................. 23

*Seekamp v. It's Huge, Inc.*,
    No. 09-18, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) ........................ 26

*Seijas v. Republic of Argentina*,
    606 F.3d 53 (2d Cir. 2010) ................................................................... 27

*State of N.Y. by Vacco v. Reebok Intern. Ltd.*,
    903 F. Supp. 532 (S.D.N.Y. 1995) ........................................................ 30

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) ................................................................... 26

*Sykes v. Mel S. Harris & Assocs. LLC*,
    285 F.R.D. 279 (S.D.N.Y. 2012) .......................................................... 26

*Teachers' Ret. Sys. v. A.C.L.N.*, Ltd.,
    No. 01-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................. 20

*Thompson v. Metropolitan Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ............................................................ 18

*Traffic Executive Ass'n*,
    627 F.3d 631 (2d Cir. 1980) ................................................................. 14

*Trief v. Dun & Bradstreet Corp.*,
    144 F.R.D. 193 (S.D.N.Y. 1992) .......................................................... 21

*Wal-Mart Stores v. Visa U.S.A.*,
    396 F.3d 96 (2d Cir. 2005) .............................................................. 13, 14

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ................................................................... 13

**Statutes**

28 U.S.C. § 1715(b) ................................................................................... 4

Cal. Bus. & Prof. Code § 17200 ................................................................ 6

Cal. Bus. & Prof. Code § 17500 ................................................................ 6

Cal. Civ. Code § 1750 ................................................................................ 6

Cal. Civ. Code § 1782 ........................................................................................................... 6

Cal. Comm. Code § 2313 ..................................................................................................... 6

Cal. Comm. Code § 2314 ..................................................................................................... 6

New York General Business Law § 349 ......................................................................... 5, 26

New York General Business Law § 350……………………..…………………………………5

**Rules**

Fed R. Civ. P. 23 ...................................................................................................... Passim

**Other Authorities**

Manual for Complex Litigation (Fourth) § 21.632 (2004) ...................................... 4, 14

Manual for Complex Litigation (Third) § 30.42 (1995) ............................................. 14

Newberg on Class Actions § 11.25 (4th ed. 2002) ..................................................... 14

Newberg on Class Actions § 11.41 (4th ed. 2002)……………………..…………………13

Newberg on Class Actions § 3.13 (4th ed. 2002) ..................................................... 23

Plaintiffs Rose Marcotrigiano ("Marcotrigiano"), Aviva Kellman ("Kellman"), Julie Hedges ("Hedges"), Dreama Hembree ("Hembree"), Candace Hiddlestone ("Hiddlestone"), Ethel Lung ("Lung"), Shane Michael ("Michael"), Jonathan D. Rubin ("Rubin"), and Stavroula Da Silva ("Da Silva") (collectively, "Plaintiffs"), individually and on behalf of the proposed class (the "Class"), submit this Memorandum of Law in support of their uncontested motion for preliminary approval of a class action settlement pursuant to Federal Rule of Civil Procedure 23(a), (b)(3), and (e) with Defendant The Honest Company, Inc. ("Honest" or "Defendant") (Plaintiffs and Defendant, collectively, the "Parties"), in this action, captioned above (the "Litigation").

This class action settlement is entered into in order to resolve the following actions: [1] *Michael v. The Honest Company, Inc.*, C.D. Cal. Case No. 15-cv-07059 (filed Sept. 7, 2015) (consolidated with *Rubin v. The Honest Company, Inc.*, C.D. Cal. Case No. 15-cv-09091, originally N.D. Cal. Case No. 15-cv-04036 (filed Sept. 3, 2015)); [2] *Buonasera v. The Honest Company, Inc.*, S.D.N.Y. Case No. 16-cv-01125 (filed Feb. 12, 2016); [3] *Kellman v. The Honest Company, Inc*., Cal. Super. Ct., Alameda Cty. Case No. RG16813421 (filed Apr. 27, 2016); and [4] *Hiddlestone v. The Honest Company, Inc.*, C.D. Cal. Case No. 16-cv-07054 (Sept. 20, 2016) (collectively the "Actions" or singularly "Action").

As detailed below, the Court should preliminarily approve the Settlement because, among other things, it provides substantial benefits to Settlement Class Members, includes a comprehensive Notice Plan, and satisfies the requirements of Fed R. Civ. P. 23(e).

## I.    INTRODUCTION

Plaintiffs allege that Defendant has engaged in a campaign of labeling, marketing, and/or advertising its products, as defined in Exhibit I of the Settlement Agreement (attached as Exhibit 1 to the Declaration of Todd S. Garber ("Garber Dec.")) (the "Covered Product(s)"), with

prominent representations that the Covered Products are "natural," "all natural," "naturally derived," "plant-based," and/or as containing "no harsh chemicals, ever!" as well as imagery and other representations that communicate a false message to consumers about the Covered Products. Plaintiffs further allege that Defendant falsely advertised and marketed its sunscreen as "effective" when it was not. Plaintiffs allege that as a result of seeing these false and misleading representations, Plaintiffs and consumers bought the Covered Products, paid more for the Covered Products than they otherwise would have paid absent the wrongful conduct, and have been damaged as a result of the wrongful conduct. Defendant denies that it has violated the applicable consumer-protection statutes or any other provision of law, and asserts that it has no liability to Plaintiffs.

The Parties engaged in extensive and hard-fought litigation, which included motion practice, substantial discovery, and a full-day mediation before Hon. Louis M. Meisinger of ADR Services, Inc. Following negotiation through Judge Meisinger, Plaintiffs, on behalf of themselves and the proposed Class, and Defendant have agreed to a proposed Settlement of these Actions pursuant to the terms of the Settlement Agreement, dated June 23, 2017. In exchange for the release of all claims asserted in this Action by Plaintiffs and the proposed Settlement Class, Defendant has agreed to establish a settlement fund ("Settlement Fund") in the amount of $7,350,000.00. Settlement Class Members are eligible to obtain $2.50 in either a Settlement Payment or Settlement Credit for each purchase of a Product during the Class Period without providing proof of purchase for up to 10 Products. For claims of more than 10 Products, a valid Proof of Purchase must be provided. There is no maximum number of Products for which any Settlement Class Member may claim with Proof of Purchase.

Thus, the proposed Settlement offers substantial benefits to the Settlement Class Members and avoids the delay, expense, and risks inherent in litigating claims through trial and appeal. The Settlement Agreement further provides that Plaintiffs' Counsel may request attorneys' fees and costs of up to one-third of the Settlement Fund as well as service awards to the Named Plaintiffs of up to $5,000 each.

In addition to monetary relief, Honest has agreed to stop labeling the Covered Products as "all natural," "100% natural," or (if the Covered Products contain Methylisothiazolinone or Cocamidopropylamine oxide in an amount that is more than incidental) made with "no harsh chemicals, ever!" Defendant will use the terms "natural," "naturally derived," "plant-based" and/or "plant-derived" on labels of the Covered Products as those terms will be defined on Defendant's website. Defendant will provide the URL to the website on the Covered Products, space permitting and where appropriate.

Following numerous and detailed discussions as well as three full-day mediation sessions and follow-up with the mediator, the Parties entered into the Settlement Agreement to resolve all claims asserted in this Litigation.

Plaintiffs therefore respectfully seek entry of an order that will (1) preliminarily approve the Settlement; (2) conditionally certify the proposed class described in the Settlement Agreement (the "Class") for purposes of the settlement only; (3) appoint Plaintiffs and counsel, Nicholas A. Carlin (Phillips, Erlewine, Given & Carlin LLP), Robert K. Shelquist (Lockridge Grindal Nauen PLLP), Kim E. Richman (Richman Law Group), Yvette Golan (The Golan Firm), Beth Terrell (Terrell Marshall Law Group PLLC), and Todd S. Garber (Finkelstein, Blankinship, Frei-Pearson & Garber, LLP), respectively, as "Class Representatives" and "Class Counsel" for the Class; (4) direct that notice be given to all Settlement Class members in the form, method, and manner set forth in the proposed

Preliminary Approval Order (attached as Exhibit A to the Settlement Agreement); (5) find that such notice constitutes the best notice practicable under the circumstances; (6) schedule various dates by which the Parties and Settlement Class members must take certain actions (*e.g.*, submit proof of claims, request exclusion from the Settlement Class, and object to the Settlement), as more fully described in the proposed Preliminary Approval Order; (7) stay all proceedings in the Actions against Defendant until the Court renders a final decision on approval of the Settlement and set a briefing schedule for the papers in support of the Final Approval Order; (8) find that Honest has complied with 28 U.S.C. § 1715(b); and (9) set a hearing date for the final approval of the proposed Settlement, an award of attorneys' fees and expenses, and the grant of service awards to Plaintiffs.

Plaintiffs submit that the Court has good cause to grant preliminary approval of this Settlement, which is the product of arm's-length negotiations by experienced counsel aided by an independent mediator. The resulting Settlement is a fair, reasonable, and adequate resolution of all claims. Preliminary approval of the Settlement will allow the Parties to notify Settlement Class members of the Settlement and of their rights, among others, to submit a claim, object to the Settlement, or request to be excluded from the Settlement Class. Preliminary approval does not require the Court to rule on the ultimate fairness of the proposed Settlement, but only to make a "preliminary determination" of the "fairness, reasonableness, and adequacy" of the proposed Settlement. *See* Federal Judicial Center, Manual for Complex Litigation (Fourth) § 21.632 (2004). The Court should order notice of the Settlement to be sent to Settlement Class members, as the Settlement, for the reasons discussed further below, is fair, reasonable, and adequate, and the proposed form and distribution of the notice is the best notice practicable under the circumstances and comports with due process.

II.    **BACKGROUND OF THE ACTIONS**

Before bringing each Action, Plaintiffs' counsel exhaustively investigated the claims of Plaintiffs and the proposed Class, independently obtaining samples of the Covered Product labels, details of Plaintiffs' purchases of the Covered Products, and examples of representations made by Honest in marketing and advertising the Covered Products. Garber Dec. ¶ 4.

The *Buonasera* Litigation

On February 12, 2016, Brad and Manon Buonasera filed a Complaint, docketed as Case No. 16-cv-01125, raising causes of action against Defendant for deceptive acts or practices and false advertising in violation of New York General Business Law ("GBL") Sections 349 and 350, as well as claims for breach of express warranty and unjust enrichment under New York common law. On April 20, 2016, Mr. Buonasera filed an Amended Complaint. *See* Dkt. No. 27. The Amended Complaint raised the same four causes of action as the original Complaint, clarified that Mr. Buonasera purchased the Covered Products at issue, and removed Manon Buonasera as a plaintiff. *Id*.

On June 22, 2016, the Court appointed Plaintiff Buonasera as Interim Lead Plaintiff and appointed the firms of Finkelstein, Blankinship, Frei-Pearson & Garber; The Golan Firm; Terrell Marshall Law Group; and the Richman Law Group as Interim Co-Lead Class Counsel of the *Buonasera* Action. *See* Dkt. No. 34. On July 6, 2016, Defendant filed a Motion to Dismiss for Failure to State a Claim (Dkt. No. 35), and on September 23, 2016, the Court issued an Order denying in part Defendant's Motion to Dismiss. Dkt. No. 39.

On June 30, 2017, the parties stipulated to the substitution of Plaintiff Marcotrigiano as named plaintiff.   Dkt. No. 56.

The *Michael* Litigation

On September 3, 2015 and September 24, 2015, pursuant to the California Consumers Legal Remedies Act (the "CLRA"), Cal. Civ. Code § 1782(a), Plaintiffs Jonathan D. Rubin and Shane Michael, respectively, sent Defendant notice letters regarding potential civil actions to be filed in the United States District Court for the Central District of California. On September 7, 2015, Plaintiff Michael filed a Complaint docketed as Case No. 15-cv-07059 against Defendant in the Central District of California, asserting claims for unlawful, unfair, or fraudulent business acts or practices in violation of the CLRA, Cal. Civ. Code § 1750 *et seq.*; false advertising in violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; breach of express warranty in violation of Cal. Comm. Code § 2313; and breach of implied warranty of merchantability in violation of Cal. Comm. Code § 2314, as well California common law claims for negligent misrepresentation and unjust enrichment. On January 8, 2016, the *Michael* Plaintiffs filed a First Amended and Consolidated Complaint, which asserted the same claims against Defendant as the original Complaint, with the addition of an equitable claim under quasi-contract. On December 6, 2016, Judge John A. Kronstadt denied Defendant's motion to dismiss except with respect to Plaintiffs' negligent misrepresentation and quasi-contract claims, and claim for injunctive relief. Dkt. No. 75.

The *Kellman* Litigation

On September 17, 2015, Plaintiff Kellman served Defendant with notice, pursuant to Cal. Civ. Code § 1782, of its violations of the CLRA. On February 2, 2016, in an effort to resolve the dispute prior to initiating litigation, the Parties participated in a mediation, which was unsuccessful. On April 27, 2016, Plaintiff Kellman filed a Complaint in California Superior Court,

Alameda County, docketed as Case No. RG16813421. The Complaint raised four causes of action against Honest: (1) unfair and deceptive acts and practices in violation of the CLRA; (2) false advertising in violation of the California FAL; (3) deceptive, unfair, and unlawful business practices in violation of the California UCL; and (4) breach of express warranty. The Court denied Defendant's motion to compel arbitration. Defendant has appealed that decision.

The *Hiddlestone* Litigation

On September 20, 2016, Plaintiffs Hiddlestone and Hedges (the "*Hiddlestone* Plaintiffs") filed a Complaint against Defendant in the Central District of California docketed as Case No. 16-cv-07054. In their Complaint, the *Hiddlestone* Plaintiffs asserted claims for violations of California's consumer-protection and false-advertising statutes, as well as claims for breach of express warranty and quasi-contract. A motion to compel arbitration in *Hiddlestone* is still pending.

\*   \*   \*

On February 9, 2017, the Parties to the four cases jointly engaged in a full-day mediation session before Hon. Louis M. Meisinger of ADR Services, Inc. Garber Dec. ¶ 11; Declaration of Nicholas A. Carlin ("Carlin Dec.") ¶ 28; Declaration of Yvette Golan ("Golan Dec.") ¶ 30. That mediation was followed by weeks of continued negotiation through the mediator. It was only after extended arm's-length negotiations under the auspices of Judge Meisinger that the Parties reached an agreement in principle with respect to a compromise and settlement of the claims raised in the Actions. Garber Dec. ¶ 11; Carlin Dec. ¶ 29; Golan Dec. ¶¶ 31-34.

### III.    SUMMARY OF THE SETTLEMENT

As part of the consideration for the Settlement Agreement, Defendant will establish a Settlement Fund in the amount of $7,350,000.00, to be transmitted to the Settlement Administrator

as follows: (a) within 10 calendar days of the Court's Preliminary Approval Order, Defendant shall transmit to the Settlement Administrator the estimated Claims Administrator Costs, and (b) within 10 calendar days of the Final Settlement Date, as defined by Section 1.19 of the Settlement Agreement, Defendant shall transmit to the Settlement Administrator the remainder of the fund minus the amount of valid Settlement Credits claims, which amount Defendant will directly transmit to Authorized Claimants. Within 30 calendar days after the Final Settlement Date, the Settlement Administrator shall deduct all other Initial Payments (for attorneys' fees and costs and service awards approved by the Court). Subject to the pro rata adjustment referenced in Section 8 of the Settlement Agreement,[1] a Settlement Class Member is eligible to obtain $2.50 in either a Settlement Payment or Settlement Credit for each purchase of a Product during the Class Period defined in the Agreement. Settlement Class Members may claim 10 Products without providing a valid Proof of Purchase; for all other Products claimed, valid Proof of Purchase must be provided. There is no maximum number of Products for which any Settlement Class Member may claim with Proof of Purchase. To receive a payment award, each claimant must submit a valid and timely Claim Form (Exhibit G of the Settlement Agreement) either by mail or electronically. The actual amount paid to individual claimants will depend upon the number of valid claims.

As an additional consideration for the Settlement Agreement, Defendant agrees to stop labeling the Covered Products as "all natural," "100% natural," or (if the Covered Products contain Methylisothiazolinone or Cocamidopropylamine oxide in an amount that is more than incidental)

---

[1] For each Authorized Claimant, the Claims Administrator shall multiply the amount of Settlement Payment or Credits validly claimed by the Pro Rata Multiplier, which is determined by dividing the total amount of all Settlement Payments and Credits validly claimed by the Net Settlement Amount (*i.e.*, the Settlement Fund minus the cost of settlement administration, attorneys' fees and costs awarded by the Court and any payment to Named Plaintiffs awarded by the Court). Settlement Agreement ¶ 8.2.

made with "no harsh chemicals, ever!" Defendant will use the terms "natural," "naturally derived," "plant-based" and/or "plant-derived" on labels of the Covered Products as those terms will be defined on Defendant's website. Defendant will provide the URL to the website on the Covered Products, space permitting and where appropriate.

The Settlement Agreement and proposed Preliminary Approval Order (Settlement Agreement, Exhibit A) envision five different forms of notice to inform Settlement Class members of the proposed Settlement:

1) **Long Form Notice**, or the full legal notice of the proposed Settlement terms, which will provide the web address of the Settlement Website (described below) and a mailing address for the Settlement Administrator; include the class definition; describe the Action and the Settlement, including the right of Settlement Class members to participate in, opt out of, or object to the Settlement and the procedures and deadlines to exercise these rights; state that any award to Settlement Class Members is contingent on the Court's final approval of the Settlement Agreement; explain that any judgment or orders entered in the Action, whether favorable or unfavorable to the Settlement Class, will include and be binding on all Settlement Class members who have not been excluded; identify Class Counsel and class representatives and provide the amounts respectively sought in attorneys' fees and costs, and service awards; explain that the Court will decide the amount of attorneys' fees and costs, and service awards to be paid; and inform Settlement Class Members when and where the Fairness Hearing will take place and how they may participate in the hearing. The Long-Form Notice will be posted on the Settlement Website, together with the operative Complaints in the Actions, Settlement Agreement, Preliminary Approval Order, a downloadable Claim

Form, and, within three court days of its filing, Class Counsel's fee application. The Notice will be substantially similar to the form attached as Exhibit B to the Settlement Agreement.

2) **Email Notice**, which will summarize the proposed Settlement terms and provide the web address of the Settlement Website, hyperlinks to the Claim Form and Product List, and an email and mailing address for the Settlement Administrator. The Email Notice will include the class definition; briefly describe the relief available to the Settlement Class members; and inform Settlement Class members of the right to participate in, object to and/or opt out of the Settlement Class and the procedures and deadlines to exercise these rights. The Email Notice will be sent to Class Members on the "Known Class Member List" as defined in the Settlement Agreement and will provide a unique Claim Member Identification Number. The Email Notice will be substantially similar to the form attached as Exhibit C to the Settlement Agreement.

3) **U.S. Mail Notice**, which will be identical to the Email Notice except that, instead of providing hyperlinks to the Claim Form and Product List, it will provide the web address of the Settlement Website. The U.S. Mail Notice will be mailed to those persons (a) to whom Honest sends email notice as described above, but then receives notification that the email was not ultimately delivered and (b) for whom Honest has a facially valid U.S. Postal mailing address. Before sending the U.S. Mail Notice, the Settlement Administrator will check the addresses to be used against the National Change of Address Database. The U.S. Mail Notice will be substantially similar to the form attached as Exhibit D to the Settlement Agreement.

4) **Publication Notice**, which will be identical to the U.S. Mail Notice except that, since it will be published in a print magazine circulating in the United States, it will not provide a unique Claim Member Identification Number. The Publication Notice will be substantially similar to the form attached as Exhibit E to the Settlement Agreement.

5) **Online Media Notice Plan**, which will target persons most likely to be members of the Settlement Class with tailored communications (*i.e.*, online banner advertisements); inform Settlement Class members that they may be eligible for payment; and direct Class Members to the Settlement Website where detailed information concerning the Settlement, including the Long-Form Notice, Settlement Agreement, Claim Form and other key documents, can be found. The Online Media Notice Plan will be as described and illustrated in Exhibit F to the Settlement Agreement.

The claims procedure is simple and convenient. The Claim Form (Exhibit G to the Settlement Agreement) will contain spaces for Settlement Class Members to report the amount spent in purchasing the Products during the Class Period, as well as the approximate date, seller and location of any retail (*i.e.*, not Honest.com) purchase. The claim forms will also allow Claimants to elect between an award in the form of a Settlement Payment or Credit. For retail purchases (*i.e.*, purchases not made from Honest.com), Claimants can verify the amount they spent on Products by providing Proof of Purchase with their Claim Forms. For online purchases on Honest.com made by Class Members on the Known Class Member List, no verification by receipt is necessary. For purchases by Class Members reflected on the Known Class Member List, the total of the verified amount for their Honest.com purchases will be populated into their electronic Claim Form. For claims without Proof of Purchase, the Claim Form shall provide a space for the Settlement Class Member to sign and submit an attestation that states to the best of his or her

knowledge the total number and type of Covered Products purchased, and the approximate date of his or her purchases.

Claim Forms will be disseminated as part of the Notice Program described above and available for download from the Settlement Website, where claimants will also be able submit completed Claim Forms electronically. The Claim Form may also be submitted to the Settlement Administrator by U.S. Mail.

In return for making these Settlement benefits available to all Settlement Class members, the Class Representatives' claims against Defendant will be dismissed with prejudice, and all Settlement Class members (other than those who properly request to be excluded from the Class) will release and be permanently barred from pursuing any "Class Released Claims"[2] against Defendant and other "Released Parties" in accordance with the provisions of the Settlement Agreement and the proposed Order Granting Final Approval of Class Settlement to be entered upon final approval of the Settlement. The Class Released Claims specifically exclude claims for personal injury, so any Class Members who claim the Covered Products caused them to suffer, for example, rashes or sunburns may pursue such claims separately. A copy of the proposed Final Approval Order is attached as Exhibit H to the

---

[2] Section 1.10 of the Settlement Agreement defines "Class Released Claims" to include "all manner of actions, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known claims or Unknown Claims, in law or equity, fixed or contingent, which Class Members have or may have arising out of or relating to any of the acts, omissions or other conduct that have or could have been alleged in the Actions regarding the Products, including, but not limited to, any and all acts, omissions, or other conduct, asserting claims regarding the advertising, marketing, labeling, packaging, promotion, or sale of the Products (including advertising or marketing claims regarding the Products' constituent ingredients) arising before Preliminary Approval, with the exception of [i] claims due to the alleged advertising of Honest's laundry detergent, dish soap, and multi-surface cleaner as being "free" of sodium lauryl sulfate (*see, e.g., In re The Honest Company, Inc., Sodium Lauryl Sulfate (SLS) Mktg. & Sales Practices Litig.*, C.D. Cal. Case No. 16-ML-02719), and [ii] claims for personal injury."

Settlement Agreement.

All Parties have investigated the facts and analyzed the relevant legal issues. While Plaintiffs believe the claims asserted have merit, Defendant disputes the factual allegations made by Plaintiffs and denies liability with respect to any of Plaintiffs' claims. Plaintiffs have weighed the costs and benefits to be obtained under the Settlement Agreement, including revision of the Covered Products' labels, as balanced against the costs, risks, and delays associated with the continued prosecution of this complex and time-consuming litigation and the likely appeals of any rulings in favor of either the proposed Class or Defendant. As a result, Plaintiffs believe that the Settlement Agreement provides substantial benefits to the proposed Class and is fair, reasonable, adequate, and in the best interests of Plaintiffs and the proposed Class. Against this backdrop, and in the interest of avoiding protracted and costly litigation, the Parties have agreed to the proposed Settlement.

## IV.    STANDARDS FOR APPROVAL OF A CLASS ACTION SETTLEMENT

Compromise and settlement of class actions suits is favored. *See Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005) (affirming approval of class action settlement and emphasizing "strong judicial policy in favor of settlements, particularly in the class action context") (quotation omitted); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg"), § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate. There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (affirming approval of class settlement (citation omitted)); *see also Hanlon v. Chrysler*

*Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

At the preliminary approval stage, the Court need only "make a preliminary determination of the fairness, reasonableness and adequacy of the settlement" so that notice of the settlement may be given to the class and a fairness hearing may be scheduled to make a final determination regarding the fairness of the settlement. *See* Newberg § 11.25; Manual for Complex Litigation §21.632. The Court's responsibility is to find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.3d 631, 634 (2d Cir. 1980); Newberg § 11.25 (stating that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and [it] appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members). Moreover, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)). Therefore, "[a] proposed settlement of a class action should . . . be preliminarily approved where it 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval'." *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011) (granting preliminary approval and quoting *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y.1997) (granting preliminary approval)); *see also Danieli v. IBM*, No. 08-3688, 2009 WL 6583144, at *4-5 (S.D.N.Y. Nov. 16, 2009) (granting

preliminary approval where settlement "has no obvious defects" and proposed allocation plan is "rationally related to the relative strengths and weaknesses of the respective claims asserted."); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) (where a settlement is achieved through arm's-length negotiations by experienced counsel and there is no evidence of fraud or collusion, "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement").

## V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE SETTLEMENT AGREEMENT

The Second Circuit has identified nine factors that should be considered in determining the fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted); *see also County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323-24 (2d Cir. 1990). As applied here, these factors weigh heavily in favor of preliminarily approving the Settlement.

### A.    The Action Is Complex And Will Be Expensive And Lengthy.

The Settlement Agreement provides substantial monetary and non-monetary benefits to the proposed Class while avoiding the significant expenses, delays, and risks attendant to motion practice related to summary judgment, not to mention trial. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174

(S.D.N.Y. 2000); *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) (approving settlement, and noting that: "If this case were tried, the Plaintiffs would incur significant trial expenses. Experts . . . might all have been necessary . . . As previously mentioned, the case would not conclude at trial, but would continue with appellate proceedings. With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear. Moreover, one of the main goals in bringing all of these cases in the first place — namely better disclosure for all customers so that they can make an informed choice in the purchase of Defendants' … [products] — is being specifically accomplished with this proposed Settlement. Absent a settlement, Defendants would have defended these three lawsuits vigorously, with potential success and no recovery of any kind for Plaintiffs."). While Plaintiffs are confident that they will defeat any summary judgment motions, Defendant believes otherwise. The ultimate outcome of the Action, if litigated further, is not certain. Moreover, a fact-intensive trial would require the Court's time and resources, and would result in significant expenses to the Parties as well. Any final judgment would likely be appealed, further increasing the expense and duration of the Litigation. The Settlement Agreement, on the other hand, will result in prompt and equitable payments to the proposed Class. Thus, this factor weighs in favor of settlement.

**B.      The Reaction Of The Class Will Likely Be Positive.**

While the reaction of absent Class members cannot be conclusively gauged until notice has been sent, the fact that Plaintiffs and their experienced counsel support the Settlement Agreement is a strong indication that members of the proposed Class will also view it positively.

**C.**    **The Current Stage Of The Instant Litigation And The Discovery That Has Occurred Favor Preliminary Approval.**

The Action has been pending for over 21 months. Numerous legal issues in this Litigation have been thoroughly vetted through aggressive motions to dismiss that were fully briefed.

Given the extent of motion practice that preceded and informed the settlement negotiations, preliminary approval of the proposed Settlement is warranted. *See In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (granting preliminary approval where "[t]he parties have developed a familiarity with the details of the case by conducting significant discovery and engaging in motion practice . . . ."); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 ("'To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery . . . it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.' Additionally, 'the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit'.") (citing *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982), and quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)).

**D.**    **Plaintiffs Face Substantial Hurdles In Establishing Liability.**

The Settlement Agreement should be preliminarily approved, because Plaintiffs face substantial hurdles establishing liability. Indeed, "[l]itigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (approving settlement). Among other issues, Defendant argues that the representations on the Product labels are neither false nor misleading. While Plaintiffs' counsel are confident in their ability to prove Plaintiffs' (and the proposed Class's) claims, the Settlement Agreement nonetheless avoids the risks inherent

in further litigation, and therefore this factor weighs in favor of preliminary approval.

**E.    Factors Related To Difficulties In Proving Damages, Maintaining The Class Action Through Trial, And The Ability Of Defendant To Pay A Judgment Are The Only Factors That Do Not Heavily Weigh In Favor Of Approving The Proposed Class Settlement.**

Putting aside the substantial difficulties that Defendant contends Plaintiffs face in establishing liability, Plaintiffs do not expect significant hurdles in proving each Class member's damages or in maintaining the class action through trial. However, "[i]n finding that a settlement is fair, not every [*Grinnell*] factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances'." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (approving settlement and quoting *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (approving settlement)). Moreover, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp. 2d at 178 n.9.

**F.    The Settlement Amounts Are Reasonable In Light Of The Best Possible Recovery And In Light Of All The Attendant Risks Of Litigation.**

Subject to pro rata adjustment, a Settlement Class Member stands to receive $2.50 in either a Settlement Payment or Settlement Credit for each purchase of a Product during the Class Period, without providing a valid Proof of Purchase for up to 10 Products; for all other Products claimed, valid Proof of Purchase must be provided. There is no maximum number of Products for which any Settlement Class Member may claim with Proof of Purchase. Such a substantial recovery merits approval of the proposed Settlement, particularly in light of the time and uncertainty involved in continued class litigation and inevitable appeals.

Judging whether a settlement is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Michael Milken & Assocs. Sec. Lit.*, 150 F.R.D. 57, 66

(S.D.N.Y. 1993). Instead, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) (approving settlement for $5 million where potential liability was $35 million). Even where a settlement is for substantially less than the maximum potential recovery, approval may be appropriate. *See Grinnell Corp.*, 495 F.2d at 455 n. 2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even an thousandth part of a single percent of the potential recovery."); *see also Chambery v. Tuxedo Junction, Inc.*, No. 12-6539, 2014 WL 3725157, at *7 (W.D.N.Y. July 25, 2014) ("[A] $200,000 settlement is reasonable where the potential recovery is $3 million, especially when taking into consideration Defendant's financial position and the risks of litigation."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (approving settlement of $2.5 million over objection that best possible recovery was $125 million); *Cagan v. Anchor Sav. Bank FSB*, No. 88-3024, 1990 WL 73423, at *12 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where maximum potential recovery was approximately $121 million).

Here, Settlement Class members who submit valid claims without Proof of Purchase stand to receive $2.50 for each purchase of a Covered Product for up to 10 Products purchased during the Class Period, and could receive an additional $2.50 for each additional purchase during the period with proof of purchase. There is no maximum number of Covered Products for which any Settlement Class Member may claim with Proof of Purchase. The individual amounts Settlement Class members will receive may be substantial depending on how many Covered Products a Settlement Class member claims and whether the claimant can produce Proof of Purchase. On the other hand, Defendant could prevail on its legal arguments to defeat liability, resulting in no

recovery for Settlement Class members. Given this broad range of possible damages, the Settlement Agreement provides a substantial recovery, including a change in Defendant's business practices and effective notice to the proposed Class, that falls well within the range that courts have traditionally found to be fair and adequate under the law.

Moreover, the fact that the Settlement Agreement provides for a prompt payment to claimants favors approval. *See Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004) ("[T]he proposed Settlement provides for payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road. Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility—little or no recovery.") (citing *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.") (modified on other grounds)).

Therefore, evaluated collectively, these nine factors militate in favor of preliminarily approving the Settlement Agreement.

## VI.    THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS

"Under Federal Rule 23(c)(1), 'the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date.'" *Ayzelman v. Statewide Credit Services Corp.*, 238 F.R.D. 358, 362 (E.D.N.Y. 2006) (citation and quotation marks omitted). "Certification of a class for settlement purposes only is permissible and appropriate." *Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (citation omitted). Where a class is proposed in connection with a motion for preliminary approval, "a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). Courts employ a "'liberal rather than

restrictive construction' of Rule 23, 'adopt[ing] a standard of flexibility' in deciding . . . certification." *Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir. 1997).

Plaintiffs seek the conditional certification of the following Class under Rules 23(a) and 23(b)(3) for purposes of effectuating the settlement:

> All persons residing in the United States who purchased, and did not subsequently return, the Products between January 17, 2012 and [date of entry of Preliminary Approval Order]." The term "Products" means those items listed in Exhibit I of the Settlement Agreement. Excluded from the Class are Defendant's Counsel, Defendant's officers and directors, and the judge presiding over the Action.

Because all of the certification requirements for settlement purposes are met and Defendant consents to conditional certification of a class action for settlement purposes only, Plaintiffs respectfully request that the Court conditionally certify the proposed Class.

### A.    The Class Satisfies Rule 23(a).

There are four Rule 23(a) requirements (numerosity, commonality, typicality and adequacy) and one implicit requirement of "ascertainability," all of which the proposed Class satisfies.

### 1.    The Class Is So Numerous That Joinder Of All Members Is Impracticable.

The Class comprises millions consumers, rendering joinder impracticable. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.") (citation omitted).

### 2.    There Are Questions Of Law Or Fact Common To The Class.

Rule 23(a)(2) provides that there must be "questions of law or fact common to the class" for a suit to be certified as a class action. Fed. R. Civ. P. 23(a)(2). "Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members. Generally, courts have liberally construed the commonality

requirement to mandate a minimum of one issue common to all class members." *Trief v. Dun &*
*Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992) (citations omitted).

Here, Plaintiffs contend that there is one or more issues common to every proposed Class
member, namely, whether Defendant's uniform representations regarding the Covered Products
are false, whether consumers are misled and deceived by the advertisements and labels, whether
Defendant's conduct constitutes violations of various states' consumer protection laws, whether
Plaintiffs and other proposed Class members have been injured and the proper measure of their
losses as a result of those injuries, and whether Plaintiffs and the proposed Class members are
entitled to injunctive, declaratory, or other equitable relief. Courts routinely find commonality
when claims arise from a uniform misrepresentation. *See In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108, 118 (2d Cir. 2013) ("[F]raud claims based on uniform misrepresentations to all
members of a class are appropriate subjects for class certification because, unlike fraud claims in
which there are material variations in the misrepresentations made to each class member, uniform
misrepresentations create no need for a series of mini-trials." (internal quotations and citations
omitted)); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405 (S.D.N.Y. 2015) ("A common question
with respect to the second theory of liability is whether the [label] claim is false and/or misleading.
The answer to this question is common to all class members, and is apt to drive the resolution of
this litigation."); *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014) (common
question in a consumer class action is whether a product's manufacturer "defrauded purchasers"
by making a specific claim on the product's label); *Guido v. L'Oreal, USA, Inc.*, No. 11-1067,
2013 WL 3353857, at 4* (C.D. Cal. July 1, 2013) (certifying a class under New York's GBL and
finding that commonality is met when the "gravamen of plaintiffs' claims … is that Serum should

have, but did not, contain flammability warning" and "[b]ecause Serum was packaged and sold uniformly across the nation").

Moreover, since materiality is determined by an objective "reasonable consumer" standard, this issue is also common to the class. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409 ("[T]he Supreme Court has held materiality 'is a question common to all members of the class' when, as here, the materiality of an alleged misrepresentation is judged according to an objective standard." (citing *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013))).

Plaintiffs have therefore met the commonality requirement because there are questions of law and fact common to all members of the Settlement Class.

### 3. Plaintiffs' Claims Are Typical Of The Claims Of The Class.

Rule 23(a)(3) provides that the Plaintiffs' claims must be "typical of the claims of . . . the class." Fed. R. Civ. P. 23(a)(3). Rule 23(a)(3) is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (citation omitted). "When the same 'unlawful conduct was directed at both the named Plaintiffs and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.'" *D'Alauro v. GC Services Ltd. P'ship*, 168 F.R.D. 451, 456-57 (E.D.N.Y. 1996) (approving settlement and citing Newberg § 3.13 and *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981)).

Here, Plaintiffs' claims and those of the proposed Class members arise from the same conduct. All members of the proposed Class were comparably injured through the uniform conduct described above and were subject to Defendant's labeling and marketing practices. Plaintiffs

contend that all members of the proposed Class are owed damages for the exact same conduct. These circumstances are essentially identical to *Ebin*, where Judge Rakoff found that plaintiffs who had purchased mislabeled olive oil products were typical of a nationwide class of purchasers, despite alleged differences with respect to their individual purchasing decisions. *See Ebin*, 297 F.R.D. at 566-67.

Plaintiffs' interests align with the Class members' interests in that all Class members seek relief for being deceived by Defendant when they purchased the Products. Therefore, Plaintiffs' claims are typical of the Classes they seek to represent.

### 4. Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class.

Rule 23(a)(4) requires that "the representative parties fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine adequacy, the Court must inquire as to whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Brooklyn Ctr. for Independence of the Disabled v. Bloomberg*, No. 11-6690, 2012 WL 5438849, at *8 (S.D.N.Y. Nov. 7, 2012) (quotation omitted).

Here, Plaintiffs do not have any interests antagonistic to the proposed Class. To the contrary, they have been actively protecting the interests of the proposed Class. Plaintiffs engaged in the prosecution of their respective actions since their inception.

Moreover, Nicholas A. Carlin (Phillips, Erlewine, Given & Carlin LLP), Robert K. Shelquist (Lockridge Grindal Nauen PLLP), Kim E. Richman (Richman Law Group), Yvette Golan (The Golan Firm), Beth Terrell (Terrell Marshall Law Group PLLC), and Todd S. Garber (Finkelstein, Blankinship, Frei-Pearson & Garber LLP) (collectively, "Plaintiffs' Counsel") are more than qualified, experienced, and able to conduct this litigation. They have demonstrated

through the course of this litigation the ability to successfully prosecute this case, having survived a motion to dismiss brought by highly experienced and skilled counsel and having obtained the instant proposed Settlement from a well-heeled Defendant with experienced and skilled counsel. Moreover, as demonstrated by the Plaintiffs' Counsel's respective Declarations and Firm Resumes, Plaintiffs' Counsel have been appointed class counsel in numerous other cases.

Accordingly, the Court should conclude that Plaintiffs will adequately represent the Class.

**B.    The Class Satisfies Rule 23(b)(3).**

Rule 23(b)(3) provides that questions of law or fact common to class members must "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). In addition, Plaintiffs must demonstrate that "[a] class action is superior to other methods for fairly and efficiently adjudicating the controversy." *Id.*

**1.    Common Questions Predominate Over Individual Issues.**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance thus requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (abrogated on other grounds).

Here, Defendant's liability turns on whether their representations regarding the Covered Products are deceptive and misleading, and every proposed Class member's claim may be proven by the same set of facts regarding the contents of the Covered Products. This is a binary issue, the resolution of which will be outcome-determinative for the entire Class, because deceptiveness is evaluated under the objective reasonable consumer standard. *See Marcus v. AT&T*, 138 F.3d 46,

64 (2d Cir. 1998) (N.Y. GBL § 349); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (N.Y. 1995) (same); *Makaeff v. Trump Univ., LLC*, No. 10-9402014, 2014 WL 688164, at **11, 13 (S.D. Cal. Feb. 21, 2014) (UCL, FAL, CLRA). Thus, a jury would have decided for each Class, in its entirety, whether Defendant's label is deceptive or not for all the Products. *See Sykes*, 285 F.R.D. 279, 293 (S.D.N.Y. 2012) (certifying GBL § 349 claim where "[e]very potential class member's claim arises out of defendants' uniform, widespread practice" and therefore whether this practice violates GBL § 349 "does not depend on individualized considerations"), *aff'd sub nom. Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015); *Seekamp v. It's Huge, Inc.*, No. 09-18, 2012 WL 860364, at *10 (N.D.N.Y. Mar. 13, 2012) (certifying GBL § 349 claim where the alleged legality of the representation was the "'gravamen of every class member's claim, and so may be proven on a class-wide level'" (quoting *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D 418, 435 (S.D.N.Y. 2009))).

Accordingly, the Court should find that the Class satisfies the commonality requirement of Rule 23(b)(3).

### 2.    A Class Action Is A Fair And Efficient Method For Adjudicating This Controversy.

Rule 23(b)(3) also requires a determination as to whether a class action is the superior means to adjudicate the proposed Class's claims. The Rule sets forth a list of relevant factors: class members' interest in bringing individual actions; the extent of existing litigation by class members; the desirability of concentrating the litigation in one forum; and potential issues with managing a class action. Fed. R. Civ. P. 23(b)(3)(A-D). Here, each of the factors weighs in favor of certification.

Each Class member's interest in bringing his or her own case is negligible if not economically irrational, given that the fees and other litigation costs would quickly outstrip any

potential recovery. When, as here, "proceeding individually would be prohibitive for class members with small claims . . . the class action device is frequently superior to individual actions." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 415 (citing *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) ("Where proceeding individually would be prohibitive due to the minimal recovery, the class action device is frequently superior to individual actions.")); *see also In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 130-31 ("Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery. Here, substituting a single class action for numerous trials in a matter involving substantial common legal issues and factual issues susceptible to generalized proof will achieve significant economies of 'time, effort and expense, and promote uniformity of decision'.") (quoting Fed. R. Civ. P. 23 advisory committee's notes)).

## VII. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Plaintiffs' Counsel should be appointed as Co-Class Counsel. Rule 23(g) enumerates four factors for evaluating the adequacy of proposed counsel:

> (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and types of claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(C)(i).[3] All of these factors militate in favor of appointing Plaintiffs' Counsel as class counsel. Plaintiffs' Counsel also have extensive experience litigating class actions, as demonstrated by the numerous times the firms have been appointed class counsel. Garber Dec. ¶ 16 (Exhibit 2); Declaration of Kim E. Richman ("Richman Dec.") ¶ 11 (Exhibit A);

---

[3] *See also deMunecas v. Bold Food, LLC*, No. 09-00440, 2010 WL 2399345, at *3 (S.D.N.Y. Apr. 19, 2010) ("The work that [Plaintiff' counsel] has performed both in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests.").

Golan Dec. ¶ 13; Carlin Dec. ¶¶ 5-11, 21; Declaration of Beth E. Terrell ¶¶ 3-5, 13-16; Declaration of Robert K. Shelquist, Exhibit A. Finally, Plaintiffs' Counsel have more than sufficient resources to represent the proposed Class. Garber Dec. ¶ 13; Richman Dec. ¶ 11; Golan Dec. ¶ 36; Carlin Dec. ¶ 14. Therefore, Plaintiffs respectfully ask that this Court appoint their counsel as counsel for the proposed Class.

## VIII.    THE PROPOSED CLASS NOTICE IS APPROPRIATE

Rule 23(c)(2)(B) requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule also requires that any such notice clearly and concisely state, in plain and easily understood language, the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(b)(2)(B).

As described above and in the Settlement Agreement, Plaintiffs propose to effect notice to the Settlement Class through publication on the Settlement Administrator's website and a print magazine circulating in the United States, directed website notice, and for Class Members on the Known Class Member List, individual notice via email and U.S. mail. This is the best notice practicable in the circumstances. *In re Prudential Securities Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 210–11 (S.D.N.Y. 1995) (holding that direct notice to class members whose addresses can be reasonably located and publication notice are the best notice practicable). First, many of the Settlement Class Members can be identified by the Defendant because the Settlement Class Member purchased the Covered Products from Honest.com. These Settlement Class Members will

receive email and/or U.S. Mail Notice. *See Jermyn v. Best Buy Stores, L.P.*, No. 08-00214, 2010 WL 5187746, at *2 (S.D.N.Y. Dec. 6, 2010) ("[W]here the names and addresses of class members may be ascertained through reasonable efforts, individual notice must be sent."); *Berland v. Mack*, 48 F.R.D. 121, 129 (S.D.N.Y. 1969) ("Where members of the class are readily identifiable and personal notice would not be so prohibitively expensive as to prevent the class action from being prosecuted, individual notices by first class mail would in most cases be the 'best notice practicable'.").

With respect to other Class Members, the proposed Settlement provides for online publication of the Long-Form Class Notice (Exhibit B to the Settlement Agreement) and other key documents, as well as publication of a summary notice on a print magazine circulating in the United States. The Class Notice, which Settlement Class members can also obtain directly from the Settlement Administrator, provides a detailed description of the proposed Settlement, the requests by Class Counsel and the Class Representatives for an award of fees and expenses and service awards, respectively, and Settlement Class members' various rights and options. Indeed, "when class members' names and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due process." *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 107 (S.D.N.Y. 2007); *see also In re Platinum and Palladium Commodities Litig.*, No. 10-3617, 2014 WL 3500655, at *14 (S.D.N.Y. July 15, 2014) ("Given the greater difficulties in contacting Physical Class members, the proposed publication notice is the best practicable notice plan under the circumstances."); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118,123–24 (S.D.N.Y. 2001) (finding publication notice to "lapsed policy" subclass in policyholders' class action against life insurer reasonable and sufficient because insurer had determined that 85% of applications for lapsed policies were irretrievable, illegible, or destroyed,

and only half of total notifiable lapsed policyholders were class members anyway); *State of N.Y. by Vacco v. Reebok Intern. Ltd.*, 903 F. Supp. 532, 533 (S.D.N.Y. 1995) (holding, in *parens patriae* anti-trust action, that publication notice "was plainly the best notice practicable under the circumstances given the enormous number of potential class numbers who had purchased products, the lack of warranty cards to identify customers, and the high costs of individual notice"); *In re MetLife Demutualization Litig.*, 262 F.R.D. 205, 208 (E.D.N.Y. 2009) ("The best practicable notice under the circumstances is notice by publication in newspapers. In view of the millions of members of the class, notice to class members by individual postal mail, email, or radio or television advertisements, is neither necessary nor appropriate.").

Plaintiffs respectfully submit that, under the circumstances, the Class Notice program described in the proposed Settlement constitutes the best practicable notice under Federal Rule of Civil Procedure 23(c)(2)(B). Therefore, Plaintiffs respectfully request that the Court approve the form of each notice attached as Exhibits B-F to the Settlement Agreement.

## IX. <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court preliminarily approve the Settlement Agreement, conditionally certify the proposed Class, approve the proposed notices and Claim Forms, appoint Plaintiffs' Counsel as Class Counsel, and enter the contemporaneously filed proposed Preliminary Approval Order.

Dated: June 30, 2017

**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**

*/s/ Todd S. Garber*　　　　　　　
Todd S. Garber
445 Hamilton Avenue, Suite 605
White Plains, NY 10601
Telephone: (914) 298-3290
tgarber@fbfglaw.com

Kim E. Richman
**RICHMAN LAW GROUP**
81 Prospect Street
Brooklyn, NY 11201
Telephone: (212) 687-8291
krichman@richmanlawgroup.com


Nicholas A. Carlin
**Phillips, Erlewine, Given & Carlin, LLP**
39 Mesa Street, Suite 201 - The Presidio
San Francisco, CA 94129
Telephone: (415)-398-0900
nac@phillaw.com

Yvette Golan
**The Golan Firm**
1712 N Street NW, Suite 302
Washington, D.C. 20036
Telephone: (866) 298-4150 (Ext. 101)
ygolan@tgfirm.com

Beth Ellen Terrell
**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300
Seattle, WA 98103
Telephone: (206) 816-6603
bterrell@terrellmarshall.com

Robert K. Shelquist
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401
Telephone: (612) 339-6900
rkshelquist@locklaw.com

*Attorneys for Plaintiffs and Proposed Class*

{00285678 }                    31