**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: HONEST MARKETING LITIGATION | Civil Action No. 16-cv-01125-VM |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION…………………………………………………………………...1

II.    BACKGROUND OF THE ACTIONS…………………………………………………3

III.   SUMMARY OF THE SETTLEMENT………………………………………………...7

IV.    STANDARDS FOR APPROVAL OF A CLASS ACTION SETTLEMENT…………..11

V.     THE SETTLEMENT IS FAIR AND REASONABLE…………………………………13

    A.     The Settlement Is Procedurally Fair…………………………………………13

    B.     The Settlement Is Substantively Fair…………………………………………14

        1.     The Actions Are Complex And Will Be Expensive And Lengthy………14

        2.     The Reaction Of The Class Was Positive………………………………..15

        3.     The Current Stage Of The Instant Litigation And
             The Discovery That Has Occurred Favors Preliminary Approval……….16

        4.     Plaintiffs Face Substantial Hurdles In Establishing Liability……………17

        5.     Plaintiffs Faced Difficulties Proving Damages
             And Certifying and Maintaining The Class Action Through Trial………18

        6.     Defendant's Ability To Withstand A
             Greater Judgment Does Not Preclude Final Approval……………………19

        7.     The Settlement Amounts Are Reasonable In
             Light Of The Best Possible Recovery And In
             Light Of All The Attendant Risks Of Litigation…………………………19

VI.    THE CLASS NOTICE SATISFIED THE
      REQUIREMENTS OF RULE 23 AND DUE PROCESS………………………………22

VII.   THE COURT SHOULD CERTIFY THE CLASS………………………………………...25

CONCLUSION…………………………………………………………………………………25

# TABLE OF AUTHORITIES

## Cases

*Ault v. J.M. Smucker Co.*,
   310 F.R.D. 59 (S.D.N.Y. 2015) .................................................................................. 18

*Berland v. Mack,*
   48 F.R.D. 121 (S.D.N.Y. 1969) .................................................................................. 23

*Cagan v. Anchor Sav. Bank FSB,*
   No. 88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ......................................... 20

*Chambery v. Tuxedo Junction, Inc.,*
   No. 12- 6539, 2014 WL 3725157 (W.D.N.Y. July 25, 2014) .................................... 20

*Charron v. Pinnacle Grp. N.Y. LLC,*
   874 F. Supp. 2d 179 (S.D.N.Y. 2012) ................................................................. 15, 16

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ................................................................................. 12, 20

*County of Suffolk v. Long Island Lighting Co.,*
   907 F.2d 1295 (2d Cir. 1990) .................................................................................... 16

*Dupler v. Costco Wholesale Corp.,*
   705 F. Supp. 2d 231 (E.D.N.Y 2010) ....................................................................... 25

*D'Amato v. Deutsche Bank,*
   235 F.3d 78 (2d Cir. 2001) (2d Cir. 2001) .......................................................... 12, 13

*Fleisher v. Phoenix Life Ins. Co.,*
   No. 11-8405, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) .................................... 20

*Groden v. Random House, Inc.,*
   No. 94-1074, 1994 WL 455555 (S.D.N.Y. Aug. 23, 1994) ...................................... 17

*Hairston v. South Beach Beverage Co.,*
   No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) .................................... 17

*Hayes v. Harmony Gold Min. Co. Ltd.,*
   509 Fed. Appx. 21 (2d Cir. 2013) ............................................................................. 13

*In re American Bank Note Holographics, Inc. Sec. Litig.,*
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ....................................................................... 15

*In re Austrian and German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ....................................................................... 12, 14, 17, 19

*In re Fab Universal Corp. Shareholder Derivative Litig.*,
  No. 14-687, 2015 WL 7299773 (S.D.N.Y. Nov. 17, 2015) ................................................. 13, 14

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................................... 16

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ..................................................................................... 12

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  No. 04-8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...................................................... 25

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ..................................................................................... 13

*In re MetLife Demutualization Litig.*,
  262 F.R.D. 205 (E.D.N.Y. 2009) ..................................................................................... 24

*In re Michael Milken and Associates Sec. Lit.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) ....................................................................................... 20

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ..................................................................................... 17

*In re Platinum and Palladium Commodities Litig.*,
  No. 10-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ...................................................... 23

*In re Prudential Securities Inc. Ltd. Partnerships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ..................................................................................... 23

*In re Vivendi Universal, S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) ....................................................................................... 24

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ........................................................................................... 16

*In re "Agent Orange" Prod. Liab. Litig.*,
  611 F. Supp. 1396 (E.D.N.Y. 1985) ................................................................................. 21

*Ingles v. Toro*,
  438 F. Supp. 2d 203 (S.D.N.Y. 2006) .............................................................................. 12

*Jermyn v. Best Buy Stores, L.P.*,
    No. 08-00214, 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) ................................... 23

*Kosta v. Del Monte Foods, Inc.*,
    308 F.R.D. 217 (N.D. Cal. 2015) ................................................................................ 18

*Martens v. Smith Barney, Inc.*,
    181 F.R.D. 243 (S.D.N.Y. 1998) ................................................................................ 17

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ........................................................................ 20

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ............................................................................... 17, 19

*Odom v. Hazen Transp., Inc.*,
    275 F.R.D. 400 (W.D.N.Y. 2011) .............................................................................. 17

*Penthouse Exec. Club Compen. Litig.*, No. 10-1145,
    No. 10-1145, 2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013) ...................................... 14

*Plummer v. Chemical Bank*,
    668 F.2d 654 (2d Cir. 1982) ...................................................................................... 17

*Randolph v. J.M. Smucker Co.*,
    303 F.R.D. 679 (S.D. Fla. 2014) ............................................................................... 18

*Rooney v. Cumberland Packing Corp.*,
    No. 12-33, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) .......................................... 18

*TBK Partners, Ltd. v. W. Union Corp.*,
    675 F.2d 456 (2d Cir. 1982) ...................................................................................... 16

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
    No. 01-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ..................................... 21

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................................ 15

*Velez v. Novartis Pharm. Corp.*,
    No. 04-9194, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ...................................... 20

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ........................................................................................ 12

*Weinberger v. Kendrick,*
  698 F.2d 61 (2d Cir. 1982) ........................................................................... 12

*Williams v. First National Bank,*
  216 U.S. 582 (1910) ..................................................................................... 12

**Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................................ 4

Cal. Bus. & Prof. Code § 17500 ........................................................................ 4

Cal. Civ. Code § 1750 ........................................................................................ 4

Cal. Civ. Code § 1782 ........................................................................................ 6

Cal. Civ. Code § 1782(a) .................................................................................... 4

Cal. Comm. Code § 2313 .................................................................................... 4

Cal. Comm. Code § 2314 .................................................................................... 4

New York General Business Law ("GBL") §§ 349, 350 .................................... 5

**Rules**

Federal Rule of Civil Procedure 23(a), (b)(3) and (e) ........................... 3, 12, 23

Plaintiffs Rose Macrotrigiano ("Macrotrigiano"), Aviva Kellman ("Kellman"), Julie Hedges ("Hedges"), Dreama Hembree ("Hembree"), Candace Hiddlestone ("Hiddlestone"), Ethel Lung ("Lung"), Shane Michael ("Michael"), Jonathan D. Rubin ("Rubin"), and Stavroula Da Silva ("Da Silva") (collectively, "Plaintiffs"), individually and on behalf of the proposed class (the "Settlement Class"), submit this memorandum of law in support of their motion for final approval of a class action settlement of the action captioned above (the "Litigation"), pursuant to Federal Rule of Civil Procedure 23(a), (b)(3) and (e).

## I.   **INTRODUCTION**

This motion pertains to four class actions: [1] *Michael v. The Honest Company, Inc.*, C.D. Cal. Case No. 15-cv-07059 (filed Sept. 7, 2015) (consolidated with *Rubin v. The Honest Company, Inc.*, C.D. Cal. Case No. 15-cv-09091, originally N.D. Cal. Case No. 15-cv-04036 (filed Sept. 3, 2015)); [2] *Buonasera v. The Honest Company, Inc.*, S.D.N.Y. Case No. 16-cv-01125 (filed Feb. 12, 2016); [3] *Kellman v. The Honest Company, Inc.*, Cal. Super. Ct., Alameda Cty. Case No. RG16813421 (filed Apr. 27, 2016); and [4] *Hiddlestone v. The Honest Company, Inc.*, C.D. Cal. Case No. 16-cv-07054 (Sept. 20, 2016) (collectively the "Actions" or singularly "Action". ").  After almost two years of hard-fought litigation and following a full day of mediation, Plaintiffs and Defendant The Honest Company, Inc. ("Honest" or "Defendant") have reached a global settlement of the Actions on behalf of the Settlement Class.  Plaintiffs respectfully request that the Court approve the Settlement.

First, the Settlement confers substantial benefits to the Settlement Class in the form of monetary and non-monetary relief without the delay, expense, and risks associated with trial and appeal.  In exchange for the release of all claims asserted, Defendant has agreed to establish a settlement fund ("Settlement Fund") in the amount of $7,350,000.00.  Settlement Class members

are eligible to claim $2.50, subject to a pro rata adjustment, in either a Settlement payment or

Settlement credit for each Covered Product they purchased during the Class Period without

providing proof of purchase for up to 10 Covered Products.  For claims of more than 10 Covered

Products, a valid proof of purchase must be provided.  There is no maximum number of Covered

Products for which any Settlement Class member may claim.  The Settlement Fund is non-

reversionary, meaning that none of the Settlement Fund will be returned to Defendant under any

circumstances.

In addition to monetary relief, Honest has agreed to stop labeling the Covered Products as

"all natural," "100% natural," or (if the Covered Products contain Methylisothiazolinone or

Cocamidopropylamine oxide in an amount that is more than incidental) made with "no harsh

chemicals, ever!" Defendant may  use the terms "natural," "naturally derived," "plant-based"

and/or "plant-derived" on labels of the Covered Products consistent with the definitions of those

terms to be included on Defendant's website, the URL of which will be provided on the labels,

space permitting and where appropriate.

Second, the Settlement was the product of arm's length negotiations aided by Hon. Louis

M. Meisinger of ADR Services, Inc., an independent mediator, and conducted by experienced

counsel who obtained informal discovery in the actions and, as such, were well-positioned to

evaluate the strengths and weaknesses of the claims and defenses asserted, the potential damages

incurred by the Settlement Class, and the fairness of the Settlement.

Third, the positive response from the Settlement Class argues in favor of approving the

Settlement.  Out of over one million Settlement Class members, only 20 have timely opted out of

the Settlement, and only three have objected.   Moreover, as of November 21, 2017, a total of

161,262 Settlement Class members have submitted claim forms.

As set out below, the settlement is fair and reasonable under the standards of the Second Circuit and this Court. Indeed, in *Vincent v. People Against Dirty, PBC*, No. 16-6936 (S.D.N.Y.), a similar consumer class action alleging *inter alia* deceptive use of the term "Natural," the Court granted final approval to a settlement that provided for a fund in the amount of $2,800,000 and individual payouts of $1.00 up to eight products without proof of purchase, and elicited 54,641 claims. This Court should similarly grant final approval here where the Settlement creates a settlement fund and authorizes individual payouts more than double those in *Vincent* and has elicited 161,262 claims, nearly three times as many claims. These distinctions are telling and support final approval.

Plaintiffs, therefore, respectfully request that the Court finally approve the Settlement.

## II.     BACKGROUND OF THE ACTIONS

In these Actions, Plaintiffs allege that Defendant has engaged in a campaign of labeling, marketing, and/or advertising certain of its products with prominent representations that the Covered Products are "natural," "all natural," "naturally derived," "plant-based," and/or as containing "no harsh chemicals, ever!" as well as imagery and other representations that communicate a false message to consumers that the Covered Products have a natural quality. Plaintiffs further allege that Defendant falsely advertised and marketed its sunscreen as "effective" when it was not. Plaintiffs allege that as a result of seeing these false and misleading representations, Plaintiffs and consumers bought the Covered Products, paid more for the Covered Products than they otherwise would have paid absent Defendant's representations, and have been damaged as a result of the wrongful conduct. Defendant vigorously denies any liability under the applicable consumer protection statutes.

<u>The *Michael* Litigation</u>

On September 3, 2015 and September 24, 2015, pursuant to the California Consumers Legal Remedies Act (the "CLRA"), Cal. Civ. Code § 1782(a), Plaintiffs Rubin and Michael, respectively, sent Defendant the requisite notice letters regarding potential civil actions under that Act. On September 7, 2015, Plaintiff Michael filed a Complaint docketed as Case No. 15-cv-07059 against Defendant in the Central District of California, asserting claims for unlawful, unfair, or fraudulent business acts or practices in violation of the CLRA, Cal. Civ. Code § 1750 *et seq.*; false advertising in violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; breach of express warranty in violation of Cal. Comm. Code § 2313; and breach of implied warranty of merchantability in violation of Cal. Comm. Code § 2314, as well as California common law claims for negligent misrepresentation and unjust enrichment. On January 8, 2016, the *Michael* Plaintiffs filed a First Amended and Consolidated Complaint, which asserted the same claims against Defendant as the original Complaint, with the addition of an equitable claim under quasi-contract. On December 6, 2016, Judge John A. Kronstadt denied Defendant's motion to dismiss with the exception of Plaintiffs' negligent misrepresentation and quasi-contract claims, as well as their claims seeking injunctive relief. Order Re: Defendant's Motion To Dismiss Amended Consolidated Complaint, *Michael v. The Honest Company, Inc.*, C.D. Cal. Case No. 15-cv-07059 (Dkt. No. 75).

<u>The *Buonasera* Litigation</u>

On February 12, 2016, Brad and Manon Buonasera filed a Complaint, docketed as Case No. 16-cv-01125 in the United States District Court for the Southern District of New York, raising causes of action against Defendant for deceptive acts or practices and false advertising in

violation of New York General Business Law ("GBL") Sections 349 and 350, as well as claims for breach of express warranty and unjust enrichment under New York common law. On April 20, 2016, Mr. Buonasera filed an Amended Complaint. *See* Amended Complaint, Dkt. No. 27. The Amended Complaint raised the same four causes of action as the original Complaint, clarified that Mr. Buonasera purchased the Covered Products at issue, and removed Manon Buonasera as a plaintiff. *Id*.

On June 22, 2016, the Court appointed Plaintiff Buonasera as Interim Lead Plaintiff and appointed the firms of Finkelstein, Blankinship, Frei-Pearson & Garber; The Golan Firm; Terrell Marshall Law Group; and the Richman Law Group as Interim Co-Lead Class Counsel of the *Buonasera* Action. *See* Decision And Order, Dkt. No. 34. On July 6, 2016, Defendant filed a Motion to Dismiss for Failure to State a Claim, Letter Addressed To Judge Victor Marrero From Jonathan Bach Dated July 6, 2016 Re: Defendants Letter In Further Support Of Dismissal, Dkt. No. 35, and on September 23, 2016, the Court issued an Order denying in part Defendant's Motion to Dismiss. Decision And Order, Dkt. No. 39.

On July 5, 2017, Plaintiff Marcotrigiano, who was involved in the early stages of the litigation and was then identified to Defendant as a potential class representative, replaced Plaintiff Buonasera as class representative. Dkt. No. 69.

The *Kellman* Litigation

On September 17, 2015, Plaintiff Kellman served Defendant with notice, pursuant to Cal. Civ. Code § 1782, of its violations of the CLRA. On February 2, 2016, in an effort to resolve the dispute prior to initiating litigation, the Parties participated in a mediation session, which was unsuccessful. On April 27, 2016, Plaintiff Kellman filed a Complaint in California Superior Court, Alameda County, docketed as Case No. RG16813421 on behalf of herself and consumer

who purchased the Covered Products online.  The Complaint raised four causes of action against Honest: (1) unfair and deceptive acts and practices in violation of the CLRA; (2) false advertising in violation of the California FAL; (3) deceptive, unfair, and unlawful business practices in violation of the California UCL; and (4) breach of express warranty.  Defendant has not yet answered the complaint; the action is stayed pending this settlement.

The *Hiddlestone* Litigation

On September 20, 2016, Plaintiffs Hiddlestone and Hedges (the "*Hiddlestone* Plaintiffs") filed a Complaint against Defendant in the Central District of California docketed as Case No. 16-cv-07054.  In their Complaint, the *Hiddlestone* Plaintiffs, on behalf of consumers who purchased the Covered Products online, asserted claims for violations of California's consumer-protection and false-advertising statutes, as well as claims for breach of express warranty and quasi-contract.  Defendant has not yet answered the complaint; the action is stayed pending this settlement.

\* \* \*

On February 9, 2017, the Parties to the four cases jointly engaged in a full-day mediation session before Hon. Louis M. Meisinger of ADR Services, Inc.  Declaration of Todd S. Garber ("Garber Dec.") ¶ 9; Declaration of Kim E. Richman ("Richman Dec.") ¶ 16; Declaration of Nicholas A. Carlin ("Carlin Dec.") ¶ 30; Declaration of Yvette Golan ("Golan Dec.") ¶ 30; Declaration of Beth E. Terrell ("Terrell Dec.") ¶ 16; Declaration of Robert K. Shelquist ("Shelquist Dec.") ¶ 8.  Previous attempts to settle the Actions through mediation before Hon. Edward Infante had been unsuccessful.  Carlin Dec. ¶ 22; Golan Dec. ¶ 18; Terrell Dec. ¶ 16; Shelquist Dec. ¶ 8.  It was only after extended arm's-length negotiations under the auspices of Judge Meisinger that the Parties reached an agreement in principle with respect to a compromise

and settlement of the claims raised in the Actions.  Garber Dec. ¶ 9; Carlin Dec. ¶¶ 30-31; Golan

Dec. ¶¶ 30-34; Terrell Dec. ¶ 16.

## III.  <u>SUMMARY OF THE SETTLEMENT</u>

Plaintiffs have weighed the benefits to be obtained under the Settlement against the costs,

risks, and delays associated with the continued prosecution of this time-consuming litigation and

the likely appeals of any rulings in favor of either the Plaintiffs and Settlement Class or

Defendant.  Against this backdrop, and in the interest of avoiding protracted and costly litigation,

the parties have agreed to a proposed Settlement as described below.

As part of the consideration for the Settlement Agreement, Defendant will establish a

Settlement Fund in the amount of $7,350,000.00.  Within 30 calendar days after the Final

Approval of the Settlement, the Settlement Administrator shall deduct all other initial payments

(*i.e.*, payments for attorneys' fees and costs and service awards approved by the Court).  Subject

to the pro rata adjustment referenced in Section 8 of the Settlement Agreement,[1] a Settlement

Class member is eligible to obtain $2.50 in either a Settlement payment or Settlement credit for

each purchase of a Covered Product during the Class Period defined in the Agreement.

Settlement Class members may claim 10 Covered Products without providing a valid proof of

purchase; for all other Covered Products claimed, valid proof of purchase must be provided.

There is no maximum number of Covered Products for which any Settlement Class member may

claim with proof of purchase.  To receive a payment award, each claimant must submit a valid

and timely Claim Form (Exhibit G of the Settlement Agreement, Dkt. No. 59-8) either by mail or

---

[1] For each authorized claimant, the Claims Administrator shall multiply the amount of Settlement payment or credits validly claimed by the pro rata multiplier, which is determined by dividing the net settlement amount (*i.e.*, the Settlement Fund minus the cost of settlement administration, attorneys' fees and costs awarded by the Court, and any payment to named Plaintiffs awarded by the Court) by the total amount of all Settlement payments and credits validly claimed. Settlement Agreement at ¶ 8.2, Dkt. No. 59-1.

electronically.  The actual amount paid to individual claimants depends upon the total amount of valid claims made.

As an additional consideration for the Settlement Agreement, Defendant has agreed to stop labeling the Covered Products as "all natural," "100% natural," or (if the Covered Products contain Methylisothiazolinone or Cocamidopropylamine oxide in an amount that is more than incidental) made with "no harsh chemicals, ever!" Defendant can use the terms "natural," "naturally derived," "plant-based," and/or "plant-derived" on labels of the Covered Products only as those terms will be defined on Defendant's website.  Defendant will provide the URL to the website on the Covered Products, space permitting and where appropriate.

The Settlement Agreement provided for five different forms of notice to inform Settlement Class members of the proposed Settlement:

1) **Long Form Notice:** This full legal notice of the proposed Settlement terms provided the web address of the Settlement Website (described further below) and a mailing address for the Settlement Administrator; included the class definition; described the Litigation and the proposed Settlement, including the right of Settlement Class members to participate in, opt out of, or object to the Settlement and the procedures and deadlines to exercise these rights; stated that any award to Settlement Class members is contingent on the Court's final approval of the Settlement Agreement; explained that any judgment or orders entered in the Litigation, whether favorable or unfavorable to the Settlement Class, would include and bind all Settlement Class members who have not been excluded; identified Class Counsel and class representatives and provided the amounts respectively sought in attorneys' fees and costs and service awards; explained that the Court will decide the amount of attorneys' fees and costs and service awards to be paid; and

informed Settlement Class members when and where the fairness hearing will take place and how they may participate in the hearing. The Long-Form Notice was posted on the Settlement Website, together with the operative Complaints in the Litigation, Settlement Agreement, Preliminary Approval Order, and a downloadable Claim Form. *See* Declaration of Denise L. Earle of Angeion Group ("Earle Dec.") ¶ 11.

2) **Email Notice:** This notice summarized the proposed Settlement terms and provided the web address of the Settlement Website, hyperlinks to the Claim Form and Product List, and an email and mailing address for the Settlement Administrator. The Email Notice included the class definition; described the relief available to the Settlement Class members; and informed Settlement Class members of the right to participate in, object to, and/or opt out of the Settlement Class and the procedures and deadlines to exercise these rights. The Email Notice was sent to Settlement Class members on the "Known Class Member List" as defined in the Settlement Agreement and provided a unique Claim Member Identification Number. *See id.* ¶ 8.

3) **U.S. Mail Notice:** This notice was identical to the Email Notice except that, instead of providing hyperlinks to the Claim Form and Product List, it provided the web address of the Settlement Website. The U.S. Mail Notice was mailed to those persons (a) to whom Honest attempted to send email notice as described above, but received notification that the email was not ultimately delivered and (b) for whom Honest has a facially valid U.S. Postal mailing address. Before sending the U.S. Mail Notice, the Settlement Administrator checked the addresses to be used against the National Change of Address Database. *See id.* ¶ 9.

4) **Publication Notice:** This notice was identical to the U.S. Mail Notice except that it was published in *People* magazine and it did not provide a unique Claim Member Identification Number. *See id.* ¶ 7.

5) **Online Media Notice Plan:** This notice plan targeted persons most likely to be members of the Settlement Class with tailored communications (*i.e.*, online banner advertisements); informed Settlement Class members that they may be eligible for payment; and directed Settlement Class members to the Settlement Website, where detailed information concerning the Settlement, including the Long Form Notice, Settlement Agreement, Claim Form, and other key documents can be found. *See id.* ¶ 6. The online media notice plan is further described and illustrated in Exhibit F of the Settlement Agreement, Dkt. No. 59-7.

The claims procedure is simple and convenient. Settlement Class Members were able to sign and submit a Claim Form that states, to the best of their knowledge, the total number and type of purchased Covered Products, and the location of the claimant's purchases, as well as allowing Claimants to elect between an award in the form of a payment or credit. For purchases by Settlement Class members reflected on the Known Class Member List, the total of the verified amounts for their Honest.com purchases was pre-populated into their electronic Claim Form, making the claim form easier to complete.

Claim Forms were disseminated as part of the notice program described above and were available for download from the Settlement Website, where claimants were able submit completed Claim Forms electronically. The Claim Form could also be submitted to the Settlement Administrator by U.S. Mail.

In return for making these Settlement benefits available to all Settlement Class members, the Class Representatives' claims against Defendant will be dismissed with prejudice, and all Settlement Class members (other than those who properly request to be excluded from the Class) will release and be permanently barred from pursuing any "Class Released Claims"[2] against Defendant and other "Released Parties" in accordance with the provisions of the Settlement Agreement and the proposed Order Granting Final Approval of Class Settlement to be entered upon final approval of the Settlement. The Class Released Claims specifically exclude claims for personal injury.

## IV. STANDARDS FOR APPROVAL OF A CLASS ACTION SETTLEMENT

Strong judicial policy favors the settlement of class actions. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.") (citing 3 Newberg, Class Actions § 5570c, at 479–80 (1977); *Williams v. First National Bank*, 216 U.S. 582, 595 (1910)). "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is particularly true in

---

[2] Section 1.10 of the Settlement Agreement defines "Class Released Claims" to include "all manner of actions, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known claims or Unknown Claims, in law or equity, fixed or contingent, which Class Members have or may have arising out of or relating to any of the acts, omissions or other conduct that have or could have been alleged in the Actions regarding the Products, including, but not limited to, any and all acts, omissions, or other conduct, asserting claims regarding the advertising, marketing, labeling, packaging, promotion, or sale of the Products (including advertising or marketing claims regarding the Products' constituent ingredients) arising before Preliminary Approval, with the exception of [i] claims due to the alleged advertising of Honest's laundry detergent, dish soap, and multi-surface cleaner as being "free" of sodium lauryl sulfate (see, e.g., In re The Honest Company, Inc., Sodium Laury/ Sulfate (SLS) Mktg. & Sales Practices Litig., C.D. Cal. Case No. 16-ML-02719), and [ii] claims for personal injury." Settlement Agreement, § 1.10, Dkt. No. 59-1.

class actions." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (citations omitted).

Courts assess proposed class action settlements to determine whether they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To do so, courts must determine whether both the negotiating process leading to a settlement and the settlement itself are fair, adequate and reasonable. *See D'Amato v. Deutsche Bank*, 235 F.3d 78, 85 (2d Cir. 2001). Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the negotiation enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173–74 (S.D.N.Y. 2000); *see also Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

The Second Circuit also identified nine factors in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462–63 (2d Cir. 1974), that district courts should consider in evaluating a proposed class action settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

"The weight given to any particular factor will vary based on the facts and circumstances of the case." *Ingles v. Toro*, 438 F. Supp. 2d 203, 211 (S.D.N.Y. 2006) (citing 7B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil § 1797.1, at 77 (3d ed. 2005)). "In finding that a settlement is fair, not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular

circumstances." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) (internal quotation and citations omitted).

Here, the Settlement is presumptively fair, and the *Grinnell* factors weigh heavily in favor of final approval of the proposed Settlement.

## V.     THE SETTLEMENT IS FAIR AND REASONABLE.

### A.     The Settlement Is Procedurally Fair

This Settlement, reached through arm's length negotiation after nearly two years of hard-fought litigation and mediation, meets the standard for procedural fairness.  In determining whether a settlement is procedurally fair, courts evaluate the "negotiating process, to ensure that the settlement resulted from arm's length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests."  *D'Amato*, 235 F.3d at 85.

Here, the standards of procedural fairness are met.  "The parties are represented by experienced counsel, supporting a conclusion that the settlement negotiations were based on informed judgments as to the merits of the claims and defenses."  *In re Fab Universal Corp. Shareholder Derivative Litig.*, No. 14-687, 2015 WL 7299773, at *2 (S.D.N.Y. Nov. 17, 2015) (finally approving settlement).  In particular, Class Counsel were well positioned to evaluate the strengths and weaknesses of Plaintiffs' claims owing to information obtained from Defendant and their extensive experience and knowledge in the area of complex and class action litigation.  *See* Garber Dec. ¶¶ 3, 9, 12-16; Richman Dec. ¶¶ 5-7, 9, 15; Carlin Dec. ¶¶ 4-16; Golan Dec. ¶¶ 4, 7-15, 29 Terrell Dec. ¶¶ 4-12; Shelquist Dec. ¶¶ 4-7.  Moreover, an independent and experienced mediator, Hon. Louis M. Meisinger of ADR Services, Inc., conducted settlement negotiations.  *See Hayes v. Harmony Gold Min. Co. Ltd.*, 509 Fed. Appx. 21, 23 (2d Cir. 2013) (unpublished) (finally approving

class settlement over objection of class representative because "the proposed settlement, on terms recommended by an independent and experienced mediator, was procedurally and substantively fair"); (citations omitted); *In re Penthouse Exec. Club Compen. Litig.*, No. 10-1145, 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) ("The assistance of two experienced mediators . . . reinforces that the Settlement Agreement is non-collusive."); *In re Fab Universal Corp. Shareholder Derivative Litig.*, 2015 WL 7299773, at *2 ("The Proposed Settlement was the product of extensive formal mediation aided by a neutral JAMS mediator, hallmarks of a non-collusive, arm's-length settlement process."). And "[t]he Settlement was not conditioned on the approval of Counsel's fee award request, further evidencing arm's-length negotiations." *In re Fab Universal Corp. Shareholder Derivative Litig.*, 2015 WL 7299773, at *2. Therefore, this Court should find that the Settlement is procedurally fair.

## B. The Settlement Is Substantively Fair

### 1. The Actions Are Complex And Will Be Expensive And Lengthy

The Settlement Agreement provides substantial monetary and non-monetary benefits to the proposed Settlement Class while avoiding the significant expenses, delays, and risks attendant to motion practice related to summary judgment, not to mention trial. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). This case is no exception.

Here, continued litigation would cause additional expense and delay. Although the parties had engaged in hard-fought litigation, including motion practice, up to this point, substantial work remained to prepare this case for trial. Moreover, substantial briefing regarding motions for class certification and summary judgment remained. While Plaintiffs are confident

that they would prevail on these motions, Defendant believes otherwise. A trial would consume the Court's time and resources, and would result in significant expenses to the Parties. Any final judgment would likely be appealed, further increasing the expense and duration of the Litigation. The proposed Settlement, on the other hand, will result in prompt and equitable payments to the proposed Settlement Class. Thus, this factor weighs in favor of settlement.

### 2. The Reaction Of The Class Was Positive.

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citing *In re American Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (citation omitted)). Here, the reaction of the Settlement Class has been overwhelmingly positive.

<u>First</u>, 161,262 Settlement Class members submitted claims as of November 21, 2017. *See* Earle Dec. ¶ 15. Compared to similar settlements, this claim response rate is "above average." *Id.*

<u>Second</u>, only 23 exclusion requests (including three late requests) have been received, and only three Settlement Class members have objected to the Settlement. Earle Dec. ¶¶ 17-18. That there were a *de minimus* number of opt-outs and few objectors[3] in this class action is especially noteworthy, as "the notice and approval process generally solicits negative feedback regarding a settlement, because it is designed to solicit opt outs and objections by advising class members of the procedures and deadlines for filing such responses with the court . . . in litigation involving a large class, such as that here, it would be extremely unusual not to encounter objections." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 197 (S.D.N.Y. 2012). And courts routinely find that

---

[3] It is also noteworthy that among the few objectors is one from Monica Aufrecht, who submitted a claim, agrees with the legal theory on which Plaintiffs' claims are based and only objects to this class action because she believes other producers of personal care products are engaged in false and deceptive advertising at a level greater than Plaintiffs initially alleged in this Action.

the reaction of the class is positive and weigh this factor in favor of approval even when there are more objections and opt-outs. *See, e.g., Charron*, 874 F. Supp. 2d at 196 (118 objectors from a class of 22,000); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457 (S.D.N.Y. 2004) (noting that there were 12 objectors and 9 opt-outs from a class of a million and holding that "[t]hese extremely low numbers of objectors and opt-outs strongly support settlement approval.").[4]

The small number of objectors and opt-outs, combined with the high claims rate, weigh heavily in favor of the Settlement.

### 3. The Current Stage Of The Instant Litigation And The Discovery That Has Occurred Favors Preliminary Approval.

The third Grinnell factor questions "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quotation omitted). The Action has been pending for nearly twenty-six months, during which time numerous legal issues have been addressed through aggressive motions to dismiss that were fully briefed. *See* Section II, *supra*.

Given the extent of motion practice and informal exchange that preceded and informed the settlement negotiations, final approval of the proposed settlement is warranted. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 ("'To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery . . . it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.' Additionally, 'the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement .

---

[4] In fact, courts in this District have approved settlements even when a majority of the class objected. *See, e.g., County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1325 (2d Cir. 1990) (approving settlement where "a majority" of class objected); *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 462 (2d Cir. 1982) (between 54 and 58 percent of class objected).

. . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit.'") (citing *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982) and quoting *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 263 (S.D.N.Y. 1998)).

### 4. Plaintiffs Face Substantial Hurdles In Establishing Liability.

The Settlement Agreement should be approved because Plaintiffs face substantial hurdles establishing liability. Indeed, "[l]itigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (approving settlement); *see also Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 412 (W.D.N.Y. 2011) (approving settlement and recognizing "the concomitant risks and costs necessarily inherent in taking any litigation to completion.") (citing *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)).

Here, Plaintiffs risked losing on the merits. On a motion for summary judgment and then again at trial, if necessary, Defendant would argue that the representations on the Covered Product labels are neither false nor misleading. *See Hairston v. South Beach Beverage Co.,* No. 12-1429, 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) (dismissing complaint in part because the "all natural" language was clarified by the detailed information contained in the ingredient list); *Rooney v. Cumberland Packing Corp.,* No. 12-33, 2012 WL 1512106, at *4 (S.D. Cal. Apr. 16, 2012) (dismissing complaint because no reasonable consumer could be deceived by the label "Sugar in the Raw" because the package stated that the sugar was turbinado-sugar (a processed sugar)); *Groden v. Random House, Inc*., No. 94 CIV. 1074 (JSM), 1994 WL 455555, at *6 (S.D.N.Y. Aug. 23, 1994) (granting summary judgment to defendant on false advertising claim), *aff'd*, 61 F.3d 1045 (2d Cir. 1995). While Plaintiffs' counsel disagree that Defendant would prevail, the Settlement Agreement nonetheless avoids the risks inherent in further litigation, and therefore this factor weighs in favor of final approval.

### 5. Plaintiffs Faced Difficulties Proving Damages And Certifying and Maintaining The Class Action Through Trial.

The risk of proving damages and obtaining class certification and maintaining it through trial also supports final approval. Had a settlement not been reached, Defendant would likely contend that some class members did not consider Defendant's labels in deciding whether to purchase Defendant's products, and therefore that individualized issues regarding the representations to which class members were exposed preclude certification. Indeed, courts have denied class certification in similar cases. *See, e.g., Ault v. J.M. Smucker Co*., 310 F.R.D. 59, 67 (S.D.N.Y. 2015) (denying class certification in part because plaintiff's damages model was not "consistent with [plaintiff's] liability case . . . because it ma[de] no attempt to calculate the amount that consumers actually overpaid due to the 'All Natural' label"); *Kosta v. Del Monte Foods, Inc*., 308 F.R.D. 217, 230 (N.D. Cal. 2015) (denying class certification in part because plaintiffs "offer[ed] no method of classwide proof to show that a 'reasonable consumer' would find the challenged statements deceptive and material to their purchasing decision"); *Randolph v. J.M. Smucker Co*., 303 F.R.D. 679, 696 (S.D. Fla. 2014) (denying class certification in part because individualized issues of fact predominated as to whether a reasonable consumer "believes a product labelled as 'All Natural' derived from GMOs is indeed not 'all natural,' and whether the class member actually purchased a product containing the challenged label."). The Settlement eliminates this risk, and as such, this factor supports final approval.

Putting aside the substantial difficulties that Defendant contends Plaintiffs face in establishing liability, Plaintiffs do not anticipate significant hurdles in proving each Settlement Class member's damages or in maintaining the class action through trial.

**6. Defendant's Ability To Withstand A Greater Judgment Does Not Preclude Final Approval.**

The Settlement Agreement provides substantial recovery for the Class Members. Nevertheless, even if Defendant could afford to pay more, a, "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp. 2d at 178 n. 9. Under these circumstances, this factor is neutral and does not preclude the Court from approving the final settlement.

**7. The Settlement Amounts Are Reasonable In Light Of The Best Possible Recovery And In Light Of All The Attendant Risks Of Litigation.**

Subject to pro rata adjustment, a Settlement Class member is eligible to receive $2.50 in either a Settlement payment or Settlement credit for each purchase of a Covered Product during the Class Period, without providing a valid proof of purchase for up to 10 Covered Products; for all other Covered Products claimed, valid proof of purchase must be provided. There is no maximum number of Covered Products for which any Settlement Class member may claim with proof of purchase. Such a substantial recovery merits approval of the proposed settlement, particularly in light of the time and uncertainty involved in continued class litigation and inevitable appeals.

Judging whether a settlement is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Michael Milken and Associates Sec. Lit.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993). Instead, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972) (approving settlement for $5 million where potential liability was $35 million). Even where a settlement is for substantially less than the

maximum potential recovery, approval may be appropriate.  *See Grinnell Corp.*, 495 F.2d at 455

n. 2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a

hundredth or even an thousandth part of a single percent of the potential recovery."); *see also*

*Chambery v. Tuxedo Junction, Inc.*, No. 12- 6539, 2014 WL 3725157, at *7 (W.D.N.Y. July 25,

2014) ("[A] $200,000 settlement is reasonable where the potential recovery is $3 million,

especially when taking into consideration Defendant' financial position and the risks of

litigation."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012)

(approving settlement of $2.5 million over objection that best possible recovery was $125

million); *Cagan v. Anchor Sav. Bank FSB*, No. 88-3024, 1990 WL 73423, at *12 (E.D.N.Y. May

22, 1990).  Moreover, the "overall value of the settlement comprises monetary as well as non-

monetary relief." *Fleisher v. Phoenix Life Ins. Co.,* No. 11-8405, 2015 WL 10847814, at *10

(S.D.N.Y. Sept. 9, 2015); *see, e.g.*, *Velez v. Novartis Pharm. Corp.*, No. 04-9194, 2010 WL

4877852, at *8, *18 (S.D.N.Y. Nov. 30, 2010) (both monetary and non-monetary relief

considered in calculating value of settlement).

Here, Settlement Class members who submitted valid claims stand to receive $2.50 for

each purchase of a Covered Product.  They can receive that amount for up to 10 Covered

Products without any proof of purchase.  Beyond 10 products, proof of purchase is required, a

reasonable provision to avoid abuses of the settlement process.   The individual amounts

Settlement Class members will receive may be substantial depending on how many Covered

Products a Settlement Class member claims and whether the claimant can produce proof of

purchase.  On the other hand, Defendant could prevail at trial, resulting in no recovery for

Settlement Class members.

Given this broad range of possible damages, the Settlement Agreement provides a substantial recovery, including a change in Defendant's business practices, that falls well within the range that courts have traditionally found to be fair and adequate under the law.

In fact, this Settlement compares favorably to the settlement approved by this Court in *Vincent v. People Against Dirty, PBC*, No. 16-6936 (S.D.N.Y.). There, as here, the plaintiffs alleged that certain products were falsely labeled and advertised as "Natural" or "Naturally Derived." *See* Plaintiff's Memorandum of Law in Support of Motion for Final Approval of Settlement ("*Vincent* Plaintiffs' Final Approval Brief"), Dkt. No. 41 at 2. However, the settlement in *Vincent* was far less generous, creating a fund in the amount of $ 2.8 million, which is less than half the Settlement Fund here, and paying each class member $1.00 for up to eight products, which is less than half the individual payout here. *See id.* at 7-8. Moreover, the class response rate in *Vincent* (54,641 valid claims), although "favorable" according to this Court, pales when compared with the number of claims received here – 161,262 as of November 21, 2017. *See Vincent* Final Approval Order, Dkt. No. 55 at 3 ("54,641 class members submitted valid claims); *see also Vincent* Plaintiffs' Final Approval Brief, Dkt. No. 41 at 2 (touting a "very good response rate"). These distinctions are telling and support final approval.

Moreover, the fact that the Settlement Agreement provides for a prompt payment to claimants favors approval of the settlement. *See Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004) ("[T]he proposed Settlement provides for payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road. Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility – little or no

recovery.") (citing *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.") (modified on other grounds)).

Finally, in addition to the monetary relief, Defendant has agreed to change the practices that were challenged in this case. Honest will stop labeling the Covered Products as "all natural," "100% natural," or (if the Covered Products contain Methylisothiazolinone or Cocamidopropylamine oxide in an amount that is more than incidental) made with "no harsh chemicals, ever!" Instead, Defendant may use the terms "natural," "naturally derived," "plant-based," and/or "plant-derived" only as defined on Defendant's website and will place (when possible and appropriate) a URL to that website on the labels of the Covered Products. These important changes must also be considered when evaluating the value of this settlement, as many of the Settlement Class members can now rely on the increased clarity and transparency regarding Defendant's representations.

Therefore, when evaluated collectively, the nine *Grinell* factors weigh in favor of finding that the terms of the Settlement are fair and reasonable and granting final approval of the Settlement Agreement.

## VI.   THE CLASS NOTICE SATISFIED THE <u>REQUIREMENTS OF RULE 23 AND DUE PROCESS</u>

Rule 23(c)(2)(B) requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule also requires that any such notice clearly and concisely state, in plain and easily understood language, the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court

will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(b)(2)(B).

As directed by the Court and pursuant to the Notice Program set forth in the Settlement Agreement, Plaintiffs effected notice to the Settlement Class via publication on the Settlement Administrator's website and a print magazine circulating in the United States, directed website notice, and for Class Members on the Known Class Member List, individual notice via email and U.S. mail. *See* Dkt. Nos. 70 and 59-1; Earle Dec. ¶¶ 6-9, 11; s*ee also In re Prudential Securities Inc. Ltd. Partnerships Litig*., 163 F.R.D. 200, 210–11 (S.D.N.Y. 1995) (holding that direct notice to class members whose addresses can be reasonably located and publication notice are the best notice practicable); *see also In re Platinum and Palladium Commodities Litig.*, No. 10-3617, 2014 WL 3500655, at *14 (S.D.N.Y. July 15, 2014) ("Given the greater difficulties in contacting Physical Class members, the proposed publication notice is the best practicable notice plan under the circumstances.").

Here, Defendant was able to identify many of the Settlement Class members because the Settlement Class members purchased the Covered Products from Honest.com. These Settlement Class members received email or U.S. Mail Notice. *See Jermyn v. Best Buy Stores, L.P.*, No. 08-00214, 2010 WL 5187746, at *2 (S.D.N.Y. Dec. 6, 2010) ("[W]here the names and addresses of class members may be ascertained through reasonable efforts, individual notice must be sent."); *Berland v. Mack*, 48 F.R.D. 121, 129 (S.D.N.Y. 1969) ("Where members of the class are readily identifiable and personal notice would not be so prohibitively expensive as to prevent the class action from being prosecuted, individual notices by first class mail would in most cases be the 'best notice practicable'.").

With respect to other Class members, the Long-Form Class Notice (Exhibit B to the Settlement Agreement) and other key documents were published online and a summary notice was published in *People* magazine. The Class Notice, which Settlement Class members could also obtain directly from the Settlement Administrator, provided a detailed description of the proposed Settlement, the requests by Class Counsel and the Class Representatives for an award of fees and expenses and service awards, respectively, and Settlement Class members' various rights and options. Indeed, "when class members' names and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due process." *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 107 (S.D.N.Y. 2007); *see also In re MetLife Demutualization Litig.*, 262 F.R.D. 205, 208 (E.D.N.Y. 2009) ("The best practicable notice under the circumstances is notice by publication in newspapers. In view of the millions of members of the class, notice to class members by individual postal mail, email, or radio or television advertisements, is neither necessary nor appropriate.").

The results show the online and print publication notice was highly successful. The internet notice campaign achieved 90,790,408 impressions, nearly five time as many as in *Vincent*. *See* Earle Dec. ¶ 6; *Vincent* Final Approval Brief (Dkt. No. 41 at 2) ("18,583,355 impressions"). The internet notice campaign and print publication reached 73.18% of the Class, which is better than which is better than the 70% reach that the Federal Judicial Center already considers "a high percentage" and as "within the norm." *See* Earle Dec. ¶ 10 (citing Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d Ed. 2010)).

Further, the Settlement Administrator created a Settlement website that posted, among other information, the Class Notice (Exhibit B to the Settlement Agreement, Dkt. No. 59-3).

According to the Settlement Administrator, the Settlement website, as of November 21, 2017, has had 426,478 sessions and 516,954 page views. *See* Earle Dec. ¶ 13.

Plaintiffs respectfully submit that, under the circumstances, the Class Notice program constituted the best practicable notice under Federal Rule of Civil Procedure 23(c)(2)(B). "It is well-established class-action jurisprudence in this Circuit that courts focus the due process lens on the notice efforts made by counsel, not whether class members actually received notice." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04-8144, 2009 WL 5178546, at *23 (S.D.N.Y. Dec. 23, 2009). "[T]he question is not whether some individual got adequate notice, but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 248 (E.D.N.Y 2010) (internal quotation marks and ellipses omitted). As the Settlement Notices complied with this Court's directives, and notice to Class members was conducted in the best practicable manner, this Court should grant final approval of the Settlement.

## VII.   THE COURT SHOULD CERTIFY THE CLASS

Plaintiffs asked this Court to preliminarily certify the Class for settlement purposes, and it did so on July 10, 2017. For the reasons identified in Memorandum of Law in Support Of Uncontested Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 58 at 20-27), this Court should certify the Class.

## CONCLUSION

Plaintiffs respectfully request that the Court finally approve the Settlement Agreement, and enter the proposed Final Approval Order, attached as Exhibit H to the Settlement Agreement. *See* Final Approval Order, Dkt. No. 59-9.

Dated:    White Plains, New York
          November 22, 2017

**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**


*/s/ Todd S. Garber*
Todd S. Garber
Antonino B. Roman
445 Hamilton Avenue, Suite 605
White Plains, NY 10601
Telephone: (914) 298-3290
tgarber@fbfglaw.com
aroman@fbfglaw.com

Kim E. Richman
**RICHMAN LAW GROUP**
81 Prospect Street
Brooklyn, NY 11201
Telephone: (212) 687-8291
krichman@richmanlawgroup.com

Nicholas A. Carlin
**PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP**
39 Mesa Street, Suite 201 - The Presidio
San Francisco, CA 94129
Telephone: (415)-398-0900
nac@phillaw.com

Yvette Golan
**THE GOLAN FIRM**
1712 N Street NW, Suite 302
Washington, DC 20003
Telephone: (866) 298-4150 (Ext. 101)
ygolan@tgfirm.com

Beth Ellen Terrell
**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, WA 98103
Telephone: (206) 816-6603
bterrell@terrellmarshall.com

Robert K. Shelquist
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401
Telephone: (612) 339-6900
rkshelquist@locklaw.com

*Attorneys for Plaintiffs and Class*