**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE: HONEST MARKETING LITIGATION

Civil Action No. 16-cv-01125 (VM)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD PAYMENTS**

**TABLE OF CONTENTS**

**Page No.**

TABLE OF AUTHORITIES……………………………………………………………...ii

I.    INTRODUCTION……………………………………………………………...1

II.   THE COURT SHOULD APPROVE THE REQUESTED
      AWARD OF ATTORNEY'S FEES AND EXPENSES…………………………….3

      A. Class Counsel Is Entitled To Compensation
         Under Either The Percentage Method Or The
         Lodestar Method, But the Percentage Method Is Preferred…………………………...4

      B. The Requested Fee Is Justified Under The Percentage Model………………………..6

            1.   The Time And Labor Expended By Counsel…………………………………7

            2.  The Magnitude And Complexity Of The Litigation…………………………..7

            3.  The Risk Of The Litigation……………………………………………………8

            4.  The Quality Of Representation……………………………………………10

            5.  The Requested Fee In Relation To The Settlement…………………….....12

            6.  Public Policy Considerations……………………………………………...13

      C.  The Fee Is Also Justified Under The Lodestar/Multiplier Method…………………..14

      D.  The Reaction Of The Class Is Overwhelmingly Favorable…………………………17

III.  THE EXPENSES INCURRED ARE REASONABLE AND
      WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED…………………18

IV.   PLAINTIFFS ARE ENTITLED TO THE REQUESTED SERVICE AWARD……….19

V.    CONCLUSION………………………………………………………………21

# TABLE OF AUTHORITIES

**Cases**

*Asare v. Change Grp. of New York, Inc.,*
 No. 12-3371, 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) .................................................... 21

*Ault v. J.M. Smucker Co.,*
 310 F.R.D. 59 (S.D.N.Y. 2015) ................................................................................................ 10

*Becher v. Long Island Lighting Co.,*
 64 F. Supp. 2d 174 (E.D.N.Y. 1999) ....................................................................................... 13

*Beckman v. KeyBank, N.A.,*
 No. 12-7836, 2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013) ...................................................... 6

*Brazil v. Dole Packaged Foods, LLC,*
 660 Fed. Appx. 531 (9th Cir. 2016) ........................................................................................... 9

*Chin v. RCN Corp.,*
 No. 08-7349, 2010 WL 3958794 (S.D.N.Y. Sept. 8, 2010) ...................................................... 16

*City of Detroit v. Grinnell Corp.,*
 495 F.2d 448 (2d Cir. 1974) ....................................................................................................... 8

*Clark v. Ecolab Inc.,*
 No. 04- 4488, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) .................................................... 21

*Converse Tech., Inc. Sec. Litig.,* No. 06-1825,
 No. 06-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010) .................................................... 16

*deMunecas v. Bold Food, LLC,*
 No. 09-440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ...................................................... 15

*Dornberger v. Metropolitan Life Ins. Co.,*
 203 F.R.D. 118 (S.D.N.Y. 2001) ............................................................................................. 21

*Boeing Co. v. Van Gemert,*
 444 U.S. 472 (1980) .................................................................................................................... 4

*Gilliam v. Addicts Rehab. Ctr. Fund,*
 No. 05-3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ........................................................ 6

*Goldberger v. Integrated Resources, Inc.,*
 209 F.3d 43 (2d Cir. 2000) ............................................................................................ 4, 6, 7, 15

*Guippone v. BH S & B Holdings, LLC,*
  No. 09-1029, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ................................... 20

*Hageman v. AT & T Mobility LLC,*
  *No*. 13-50, 2015 WL 9855925 (D. Mont. Feb. 11, 2015) ...................................... 13

*Hairston v. South Beach Beverage Co.,*
  No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ................................... 10

*Hayes v. Harmony Gold Mining Co.,*
  No. 08- 03653, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ............................... 6, 13

*Hernandez v. Merrill Lynch & Co., Inc.,*
  No. 11-8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) .......................... 6, 13, 15

*Hicks v. Morgan Stanley,*
  No. 01-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................................ 5, 14

*In re Austrian & German Bank Holocaust Litig.,*
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................................ 8

*In re China Sunergy Sec. Litig.,*
  No. 07-7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ............................... 18, 19

*In re Crazy Eddie Securities Litig.,*
  824 F. Supp. 320 (E.D.N.Y. 1993) .......................................................................... 13

*In re FLAG Telecom Holdings Ltd. Sec. Litig.,*
  No. 02-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................... Passim

*In re Gilat Satellite Networks, Ltd.,*
  No. 02-1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ................................. 12

*In re Hi-Crush Partners L.P. Securities Litig.,*
  No. 12-8557, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ......................... 10, 16, 19

*In re Lloyd's Am. Tr. Fund Litig.,*
  No. 96-1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .................................. 9

*In re Marsh Erisa Litig.,*
  265 F.R.D. 128 (S.D.N.Y. 2010) ...................................................................... 6, 12, 13

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,*
  No. 02-1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ...................................... 19

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................ 15

*In re Nissan Radiator/Transmission Cooler Litig.*,
No. 10-7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013)..................... 16

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................. 8

*In re Polaroid*,
No. 03-8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007) ............... 5, 7, 21

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
912 F. Supp. 97 (S.D.N.Y. 1996) ............................................................... 18

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ....................................................................... 18

*In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices and Products Liab. Litig.*,
No. 09-2102, 2010 WL 3422722 (S.D.N.Y. Aug. 24, 2010) ..................... 19

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999) ............................................................ 5

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................Passim

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989) ............................................................. 15

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05-1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .......... 4, 5, 9, 19

*In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) .................................................. 17, 18

*Johnson v. Brennan*,
No. 10-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011).................... 21

*Kosta v. Del Monte Foods, Inc.*,
308 F.R.D. 217 (N.D. Cal. 2015) ............................................................... 10

*Matheson v. T-Bone Rest., LLC*,
No. 09-4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) .................... 21

*McDaniel v. County of Schenectady,*
  595 F.3d 411 (2d Cir. 2010) ........................................................................... 5

*Missouri v. Jenkins,*
  491 U.S. 274 (1989) ..................................................................................... 15

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,*
  No. 06-4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...................................... 6

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.,*
  No. 11-520, 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) ........................................ 15

*Randolph v. J.M. Smucker Co.,*
  303 F.R.D. 679 (S.D. Fla. 2014) ..................................................................... 10

*Reyes v. Altamarea Grp., LLC,*
  No. 10-6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) .................................... 21

*Reyes v. Buddha-Bar NYC,*
  No. 08-2494, 2009 WL 5841177 (S.D.N.Y. May 28, 2009) ..................................... 21

*Ries v. Arizona Beverages USA LLC,*
  No. 10-1139, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) ...................................... 9

*Roberts v. Texaco, Inc.,*
  979 F. Supp. 185 (S.D.N.Y. 1997) ................................................................... 20

*Rooney v. Cumberland Packing Corp.,*
  No. 12-33, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ........................................ 10

*Spicer v. Pier Sixty LLC,*
  No. 08-10240, 2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012) ................................... 15

*Steiner v. Williams,*
  No. 99-101186, 2001 WL 604035 (S.D.N.Y. May 31, 2001) ..................................... 4

*Sukhnandan v. Royal Health Care of Long Island LLC,*
  No. 12-4216, 2014 WL 3778173 (S.D.N.Y. July 31, 2014) ................................. 14, 20

*Taft v. Ackermans,*
  No. 02-7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) .................................... 8, 11

*Maley v. Del. Glob. Techs. Corp.,*
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................... 5, 13, 15, 17

*Torres v. Gristede's Operating Corp.*,
   No. 04-3316, 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ...................................................... 20

*Trustees v. Greenough,*
   105 U.S. 527 (1881) ............................................................................................................................ 4

*Viafara v. MCIZ Corp.,*
   No. 12 7452, 2014 WL 1777438 (S.D.N.Y. May 1, 2014) ...................................................... 20

*Viggiano v. Hansen Nat. Corp.,*
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ...................................................................................... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
   396 F.3d 96 (2d Cir. 2005) ............................................................................................... 5, 8

*Wright v. Stern,*
   553 F. Supp. 2d 337 (S.D.N.Y. 2008) ...................................................................................... 21

*Yuzary v. HSBC Bank USA*, N.A., No.,
   No. 12-3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ...................................................... 20

*Zeltser v. Merrill Lynch & Co., Inc.,*
   No. 13-1531, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) .................................................. 15

Plaintiffs Rose Macrotrigiano ("Macrotrigiano"), Aviva Kellman ("Kellman"), Julie Hedges ("Hedges"), Dreama Hembree ("Hembree"), Candace Hiddlestone ("Hiddlestone"), Ethel Lung ("Lung"), Shane Michael ("Michael"), Jonathan D. Rubin ("Rubin"), and Stavroula Da Silva ("Da Silva") (collectively, "Plaintiffs"), individually and on behalf of the proposed class (the "Settlement Class"), submit this Memorandum of Law in support of their motion for Attorneys' Fees, Expenses, and Service Award Payments.

## I.     <u>INTRODUCTION</u>

Subject to this Court's final approval, the following actions have been resolved by settlement: [1] *Michael v. The Honest Company, Inc.*, C.D. Cal. Case No. 15-cv-07059 (filed Sept. 7, 2015) (consolidated with *Rubin v. The Honest Company, Inc.*, C.D. Cal. Case No. 15-cv-09091, originally N.D. Cal. Case No. 15-cv-04036 (filed Sept. 3, 2015)); [2] *Buonasera v. The Honest Company, Inc.*, S.D.N.Y. Case No. 16-cv-01125 (filed Feb. 12, 2016); [3] *Kellman v. The Honest Company, Inc.*, Cal. Super. Ct., Alameda Cty. Case No. RG16813421 (filed Apr. 27, 2016); and [4] *Hiddlestone v. The Honest Company, Inc.*, C.D. Cal. Case.  As part of this settlement, Defendant has agreed not to contest the amount of attorneys' fees, expenses, and service award payments requested herein.  Accordingly, Plaintiffs ask this Court to approve their motion for Attorneys' Fees, Expenses, and Service Award Payments.

Plaintiffs allege, and Defendant denies, that Defendant has engaged in a campaign of labeling, marketing, and/or advertising its products, as defined in Exhibit I of the Settlement Agreement (Dkt. No. 59-10), with prominent representations that the Covered Products are "natural," "all natural," "naturally derived," "plant-based," and/or as containing "no harsh chemicals, ever!" as well as imagery and other representations that communicate a false message to consumers that the Covered Products have a natural quality.  Plaintiffs further allege that

Defendant falsely advertised and marketed its sunscreen as "effective" when it was not. Plaintiffs allege that because of these false and misleading representations, Plaintiffs and consumers bought the Covered Products, paid more for the Covered Products than they otherwise would have paid absent Defendant's representations, and have been damaged as a result of the wrongful conduct. Defendant denies that it has violated the applicable consumer protection statutes and asserts that it has no liability to Plaintiffs or the putative classes.

Before taking on these cases, Class Counsel identified the relevant Products, obtained copies of false and misleading Product labels and advertisements, investigated the chemical properties of the ingredients, including their categorization under federal health and safety regulations, and investigated the viability of the claims against Defendant. The Parties engaged in hard-fought litigation for over two years and eventually reached settlement with the help of a mediator. During that period, Class Counsel engaged in informal discovery and motion practice, including Defendant's motions to dismiss the Complaints, to compel arbitration, and moving for the appointment of Interim Lead Plaintiff and Co-Lead Class Counsel. Declaration of Todd S. Garber ("Garber Decl.") ¶¶ 3-4, 6-9; Declaration of Kim E. Richman ("Richman Decl.") ¶ 15; Declaration of Nicholas A. Carlin ("Carlin Decl.") ¶¶ 17, 21, 26-28, 30; Declaration of Yvette Golan ("Golan Decl.") ¶¶ 6-10, 19-24; Declaration of Beth E. Terrell ("Terrell Decl.") ¶¶ 14-15. Thus, Class Counsel engaged in significant and effective work on behalf of the Class, and it is fair to say the proposed Settlement would not have come about but for these successful efforts.

As detailed in Plaintiffs' Memorandum in Support of Motion for Final Approval of Class Action Settlement, the Settlement provides for a non-reversionary $7,350,000.00 settlement fund (the "Settlement Fund").

Class Counsel respectfully requests an attorneys' fee and expenses award of one-third of the Settlement Fund, which amounts to $2,450,000.00. The attorneys' fees (exclusive of costs) included in this request represents only 32% of the Settlement Fund, a percentage well within the range approved by many courts, including courts within this Circuit, using the percentage of the fund method. If the Court wishes to cross-check the fee using the lodestar method, the fee is also reasonable, with a negative multiplier of 0.91, as described in Section II(C) below. Moreover, the requested award, for both attorneys' fees and expenses, was disclosed in advance to the Class pursuant to the notice program approved by the Court, and it met with only two objections.[1]

Class Counsel also requests that the Court approve the payment of a $5,000 service award to each Plaintiff for the time and effort spent assisting the prosecution of the action on behalf of the Class. Plaintiffs demonstrated an understanding of both the basis of the claims and the role of a class representative. They conferred with Class Counsel concerning the status of the cases, information and documents relating to their purchases of the Covered Products, the Complaint and amendments thereto, and the Settlement. The requested service awards were also subject to arm's length negotiations with Defendant, and are comparable to other service awards in other class actions. The requested service awards were also disclosed in advance to the Class, and elicited only one objection.

## II.    THE COURT SHOULD APPROVE THE REQUESTED AWARD OF ATTORNEYS' FEES AND EXPENSES

Class Counsel have spent substantial time and resources pursuing this matter, with no promise of recovery or payment, and obtaining a favorable settlement. It is only fair that they be

---

[1] These objections are addressed in detail in the accompanying Plaintiffs' Memorandum of Law in Opposition to the Objections of Caroline Tucker, Monica Aufrecht, and Kathryn A. Wernow, to Final Approval of the Proposed Class Action Settlement ("Plaintiffs' Response to Objections"). Of the three objectors, only Ms. Wernow and Ms. Tucker objected to the fee request.

compensated with a reasonable percentage of the recovery they created, and commensurately with their hard work over two years.  As shown below, an award of $2,450,000.00, representing one-third of the Settlement Fund, for both attorneys' fees and expenses is reasonable.

### A.    Class Counsel Is Entitled To Compensation Under Either The Percentage Method Or The Lodestar Method, But The Percentage Method Is Preferred.

For more than a century, the Supreme Court has held that "where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury," the attorney is entitled to a reasonable fee.  *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (citing *Trustees v. Greenough*, 105 U.S. 527 (1881); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)).  Awarding Class Counsel reasonable fees "serves the salutary purpose of encouraging counsel to pursue meritorious claims on behalf of a class of individuals who could not afford to litigate their individual claims."  *Steiner v. Williams*, No. 99-101186, 2001 WL 604035, at *1 (S.D.N.Y. May 31, 2001).  Courts recognize that awards of fair attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and therefore "to discourage future misconduct of a similar nature."  *In re FLAG Telecom Holdings Ltd. Sec. Litig.*, No. 02-3400, 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010) (citation omitted); *see In re Veeco Instruments Inc. Sec. Litig.*, No. 05-01695, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007) (same).

Indeed, "[a]ttorneys in contingency cases reasonably should expect higher fees than would be had if they were guaranteed such fees up-front whether or not the party receives any relief."  *Hicks v. Morgan Stanley*, No. 01-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).  "No one expects a lawyer whose compensation is contingent on success of his services to charge, when successful, as little as he would charge a client who in advance has agreed to pay

for his services, regardless of success." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396

(S.D.N.Y. 1999); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05-1695, 2007 WL 4115808, at *6

(S.D.N.Y. Nov. 7, 2007) (same).[2]

District courts have awarded attorneys' fees to prevailing class counsel under either a

"percentage of the fund" or "lodestar" method in common fund cases. *See Wal-Mart Stores, Inc.*

*v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005). However, the Second Circuit disfavors the

lodestar method because it "create[s] an unanticipated disincentive to early settlements, tempt[s]

lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of

line-item fee audits." *Id*. at 122 (internal citation omitted). The percentage method is preferable

"because it reduces the incentive for counsel to drag the case out to increase the number of hours

billed; also, fewer judicial resources will be spent in evaluating the fairness of the fee petition."

*Hicks*, 2005 WL 2757792, at *9 (citation omitted). Thus, "[t]he trend in this Circuit is toward

the percentage method." *Wal-Mart*, 396 F.3d at 121; *see also In re Polaroid*, No. 03-8335, 2007

WL 2116398, at *2 (S.D.N.Y. July 19, 2007); *McDaniel v. County of Schenectady*, 595 F.3d

411, 417 (2d Cir. 2010).

Here, Class Counsel seeks attorneys' fees and expenses in the amount of $2,450,000.00,

of which $130,559.52 constitutes out-of-pocket litigation expenses (as of November 20, 2017).

*See* Garber Decl. ¶ 23; Richman Decl. ¶ 34; Carlin Decl. ¶ 50; Golan Decl. ¶ 41; Terrell Decl. ¶

28; Shelquist Decl. ¶ 13; Declaration of J. Barton Goplerud ("Goplerud Decl.") ¶ 8; Declaration

of Leonard B. Simon ("Simon Decl.") ¶ 7; Declaration of Michael J. Flannery ("Flannery Decl.")

---

[2] *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008) (citing *Maley v. Del. Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) ("Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.")).

¶ 8.  Class Counsel's fee request falls well within the range of class counsel fees approved in comparable cases.  *See, e.g., Hernandez v. Merrill Lynch & Co., Inc*., No. 11-8472, 2013 WL 1209563, at *8 (S.D.N.Y. Mar. 21, 2013) (awarding attorneys' fees in the amount of "$2,310,000 which is 33% of the settlement fund," plus costs); *Beckman v. KeyBank*, N.A., No. 12-7836, 2013 WL 1803736, at *12 (S.D.N.Y. Apr. 29, 2013) (awarding attorneys' fees equal to 33% of $4.9 million settlement fund, plus costs); *Hayes v. Harmony Gold Mining Co*., No. 08- 03653, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding attorneys' fees equal to 33.3% of $9 million settlement fund), aff'd, 509 F. App'x 21 (2d Cir. 2013); *In re Marsh Erisa Litig*., 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (awarding attorneys' fees equal to 33.33% of $35 million settlement, plus costs); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (fee equal to one-third of the settlement fund is reasonable and "consistent with the norms of class litigation in this circuit") (citations omitted).

### B.    The Requested Fee Is Justified Under The Percentage Model.

A court applying the percentage method "sets some percentage of the recovery as a fee." *Goldberger*, 209 F.3d at 47 (citation omitted).  In doing so, the court considers six factors: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  *Id.* at 50 (internal citations and quotation marks omitted).  Courts consider the same factors in applying the lodestar method.  *Id.*  All of the *Goldberger* factors argue for approval of Class Counsel's fee request.

### 1.    The Time And Labor Expended By Counsel

The time and labor expended by Class Counsel are set forth in detail in the accompanying Declarations.  Class Counsel devoted more than 4,300 hours over the course of more than two years prosecuting the cases.  Garber Decl. ¶ 17; Richman Decl. ¶ 32; Carlin Decl. ¶ 48; Golan Decl. ¶ 39; Terrell Decl. ¶ 27; Shelquist Decl. ¶ 12; Goplerud Decl. ¶ 7; Simon Decl. ¶ 6; Declaration of Jon W. Borderud ("Borderud Decl.") ¶ 6; Flannery Decl. ¶ 7.  Before bringing these actions, Class Counsel identified the relevant Products, obtained copies of false and misleading Product labels and advertisements, investigated the chemical properties of the ingredients, including their categorization under federal health and safety regulations, and investigated the viability of the claims against Defendant.  Garber Decl. ¶ X; Richman Decl. ¶ 9; Carlin Decl. ¶ 17; Golan Decl. ¶¶ 6-10; Terrell Decl. ¶ 14.  After filing the Complaint, they engaged in hard-fought litigation with Defendant's counsel for nearly two years before exploring settlement with the help of two mediators.  Garber Decl. ¶ 9; Richman Decl. ¶ 16; Carlin Decl. ¶¶ 22, 30; Golan Decl. ¶¶ 18, 30; Terrell Decl. ¶ 16; Shelquist ¶ 8.  Class Counsel engaged in informal discovery and motion practice, responding to Defendant's motions to dismiss the Complaints and to compel arbitration, and moving for the appointment of Interim Lead Plaintiff and Co-Lead Class Counsel.  Garber Decl. ¶¶ 3-4, 6-9; Richman Decl. ¶ 15; Carlin Decl. ¶¶ 17, 21, 26-28, 30; Golan Decl. ¶¶ 6-10, 19-24; Terrell Decl. ¶¶ 14-15.

### 2.    The Magnitude And Complexity Of The Litigation

The requested fee award is reasonable in light of the magnitude and complexity of the Litigation.  The Class itself comprises millions of consumers and Defendant agreed to a nationwide settlement making available $7,350,000.00 to the Class.  By any measure, the magnitude of the case is substantial, fully justifying Class Counsel's investment of time and

labor, and fully merits the requested fee award.  Moreover, like most class actions, this case is complex, raising issues such as whether the alleged misrepresentations would mislead a reasonable consumer, whether damages could be measured on a class-wide basis, and if so, how. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("Most class actions are inherently complex . . .").

### 3.  The Litigation Risk

Litigation risk is "perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft v. Ackermans*, No. 02-7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007).  "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  "Establishing liability [is] no sure thing for the plaintiffs." *Wal-Mart Stores, Inc.,* 396 F.3d at 118.  "[D]espite the most vigorous and competent of efforts, success is never guaranteed." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974).

Class Counsel faced substantial obstacles in successfully prosecuting this case.  For example, a jury could find that Defendant's representations that the Covered Products were "natural," "all natural," etc., would likely not mislead a reasonable consumer into believing that the Product consists only of naturally derived ingredients.  *See, e.g., Ries v. Arizona Beverages USA LLC*, No. 10-1139, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) (granting summary judgment for defendant in case involving "natural" beverage labeling); *but see Brazil v. Dole Packaged Foods, LLC*, 660 Fed. Appx. 531 (9th Cir. 2016) (unpublished) (reversing summary judgment for defendant on claim that "All Natural Fruit" representation was likely to deceive reasonable consumers).  Moreover, although Class Counsel defeated Defendant's motion to

compel arbitration, Defendant has appealed that decision and continues to deny critical factual and legal claims (including, but not limited to, matters regarding class certification).

Given the litigation risks, payment for all the time and effort invested in the case and out-of-pocket litigation expenses was not guaranteed -- because Class Counsel accepted the case on contingency.  *See, e.g., In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *6 ("[T]he risk of non-payment in complex cases, such as this one, is very real.  There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.  There is no guarantee of reaching trial, and even a victory at trial does not guarantee recovery.") (collecting cases).  Thus, this factor recognizes that cases taken on contingency entail risk of non-payment for the attorneys prosecuting them, and embodies an assumption that contingency work is entitled to greater compensation than non-contingency work.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 592; *In re Lloyd's Am. Tr. Fund Litig.*, No. 96-1262, 2002 WL 31663577, at *1 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams v. Rose*, No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) ("[C]ontingent fee risk is the single most important factor in awarding a multiplier[.]").  As the Second Circuit has observed:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*In re Hi-Crush Partners L.P. Securities Litig.*, No. 12-8557, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) (quoting *Grinnell Corp.,* 495 F.2d at 470).

Class Counsel incurred 100% of the risk, devoting their time and labor to gather evidence of Defendant's suspected wrongdoing, evaluating Defendant's potential liability, analyzing

potential legal theories, drafting and revising the complaint, and engaging in motion practice and discovery.  Throughout, there was no assurance of success or compensation.[3]  The requested fee award is entirely reasonable in light of the risks incurred by Class Counsel.

### 4.  The Quality Of Representation

"To determine the quality of the representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit."  *Taft v. Ackermans*, 2007 WL 414493, at *10 (citation and internal quotations omitted).

The Settlement negotiated with Defendant is a highly favorable outcome for the Class. Plaintiffs filed the lawsuit to obtain compensation for each Class Member who paid for the Covered Products on the mistaken assumption they were devoid of ingredients not naturally derived, and to enjoin Defendant from engaging in false labeling and marketing its Products.  The Settlement achieved these goals.  Under the Settlement, each Class Member is eligible to receive

---

[3] Indeed, numerous courts have either dismissed outright similar "natural" claims or denied class certification.  *See, e.g., Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 67 (S.D.N.Y. 2015) (denying class certification in part because plaintiff's damages model was not "consistent with [plaintiff's] liability case . . . because it ma[de] no attempt to calculate the amount that consumers actually overpaid due to the 'All Natural' label"); *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 230 (N.D. Cal. 2015) (denying class certification in part because plaintiffs "offer[ed] no method of classwide proof to show that a 'reasonable consumer' would find the challenged statements deceptive and material to their purchasing decision*"); Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 696 (S.D. Fla. 2014) (denying class certification in part because individualized issues of fact predominated as to whether a reasonable consumer "believes a product labelled as 'All Natural' derived from GMOs is indeed not 'all natural,' and whether the class member actually purchased a product containing the challenged label."); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877 (C.D. Cal. 2013) (finding that the label "all natural flavors" on defendant's soda's packaging was consistent with the statement of ingredients on the soda can because there were no artificial flavors in the soda); *Hairston v. South Beach Beverage Co.*, No. 12-1429, 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) (dismissing complaint in part because the "all natural" language was clarified by the detailed information contained in the ingredient list); *Rooney v. Cumberland Packing Corp.*, No. 12-33, 2012 WL 1512106, at *4 (S.D. Cal. Apr. 16, 2012) (dismissing complaint because no reasonable consumer could be deceived by the label "Sugar in the Raw" because the package stated that the sugar was turbinado-sugar (a processed sugar)).  The risk that Class Counsel would not receive any fee in this case was very real.

$2.50 for each purchase of a Covered Product for up to 10 Covered Products purchased during the Class Period, without any proof of purchase. Valid proof of purchase is, however, required for additional purchases. There is no limit to the number of purchases a Class Member may claim for with a valid proof of purchase. Defendant also agreed to stop labeling the Covered Products as "all natural," "100% natural," or (if the Covered Products contain Methylisothiazolinone or Cocamidopropylamine oxide in an amount that is more than incidental) made with "no harsh chemicals, ever!" Defendant will be able to use the terms "natural," "naturally derived," "plant-based" and/or "plant-derived" on labels of the Covered Products only as those terms will be defined on Defendant's website. Defendant will provide the URL to the website on the Covered Products, space permitting and where appropriate.

These goals would not have been met without the creativity, diligence, hard work, and skill brought to bear by Class Counsel at every stage of the proceedings. Without a doubt, the work done by Class Counsel influenced Defendant's decision to explore settlement with Plaintiffs. Class Counsel also engaged in substantial investigation through informal discovery to further inform their negotiation strategy. Garber Decl. ¶¶ 3, 9; Richman Decl. ¶ 15; Carlin Decl. ¶¶ 17, 30; Golan Decl. ¶¶ 6-10; Terrell Decl. ¶ 14. Their experience litigating consumer class actions also helped in the prosecution and settlement of the case. Class Counsel have successfully litigated other cases involving "Natural" claims. *See* Garber Decl. ¶ 15 (Exhibit 1); Richman Decl. ¶ 6; Golan Decl. ¶¶ 11-15. Class Counsel enjoy strong reputations in the area of complex and class action litigation. *See* Garber Dec. ¶¶ 12-16 (Exhibit 1); Richman Dec. ¶¶ 5-7; Carlin Dec. ¶¶ 4-16; Golan Dec. ¶¶ 4, 11-15; Terrell Dec. ¶¶ 4-12; Shelquist Dec. ¶¶ 4-7. As demonstrated by their respective declarations, Class Counsel have been appointed class counsel

in numerous other cases.  Garber Decl. ¶ 15 (Exhibit 1); Richman Decl. ¶ 6; Carlin Decl. ¶¶ 5-13; Golan Decl. ¶ 13; Terrell Decl. ¶ 11; Shelquist Decl. ¶ 6.

The high quality of the opposition that Class Counsel faced, combined with the excellent result, also attests to the quality of their representation.  Defendant is represented by skilled and highly regarded counsel from a prestigious firm with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases.  Courts have repeatedly recognized that the caliber of the opposing counsel should be considered in assessing the quality of the plaintiffs' counsel's performance, and here, it supports approval of the requested fee.  *See, e.g., In re Marsh Erisa Litig.*, 265 F.R.D. at 148 (reasonableness of fee was supported by fact that defendants "were represented by first-rate attorneys who vigorously contested Lead Plaintiffs' claims and allegations").

### 5. The Requested Fee In Relation To The Settlement

Courts consider the size of the settlement to ensure the percentage award does not constitute a "windfall."  *In re Gilat Satellite Networks, Ltd.*, No. 02-1510, 2007 WL 2743675, at *16 (E.D.N.Y. Sept. 18, 2007).

Class Counsel's fee request (exclusive of costs) of $2,319,440.48, or 32% of the Settlement Fund, is "fair and reasonable in relation to the recovery and compares favorably to fee awards in other risky common fund cases in this Circuit and elsewhere*." In re Marsh ERISA Litig.*, 265 F.R.D. at 149 (awarding $11,665,500 out of $35,000,000 settlement).  In fact, courts in this Circuit have routinely granted fee requests for one-third of comparable or substantially larger settlement funds.  *See, e.g., Hernandez*, 2013 WL 1209563, at *8 (awarding "$2,310,000 which is 33% of the settlement fund," plus costs); *Hayes*, 2011 WL 6019219, at *1 (awarding attorneys' fees equal to 33.3% of $9,000,000 settlement fund); *Maley*, 186 F. Supp. 2d at 370-71

(awarding $3,832,950 out of $11,500,000 settlement fund); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (awarding $2,583,333 out of $7,750,000 settlement fund); *In re Crazy Eddie Securities Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (awarding $14,200,000 out of $45,000,000 common fund).[4]  Thus, this factor weighs in favor of granting the fee request.

### 6.  Public Policy Considerations

Strong public policy supports rewarding counsel for bringing successful consumer protection litigation.  *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *29 (holding that if the "important public policy [of enforcing consumer protection laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing [consumer protection] laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

The Settlement promotes compliance with consumer protection laws by enjoining the false labeling and marketing of Defendant's products.  Moreover, where, as here, "relatively small claims can only be prosecuted through aggregate litigation, and the law relied on prosecution by 'private attorney generals,' attorneys who fill the private attorney general role must be adequately compensated for their efforts."  *Sukhnandan v. Royal Health Care of Long*

---

[4] *See also Hageman v. AT & T Mobility LLC, No.* 13-50, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (awarding $15,000,000 out of $45,000,000 common fund); *Desai v. ADT Sec. Sys., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013), Dkt. No. 243 (awarding one-third of $15,000,000 fund).

*Island LLC*, No. 12-4216, 2014 WL 3778173, at *9 (S.D.N.Y. July 31, 2014).

Simply put, there is no reason to deny the fee request, which falls squarely within the range of fees normally approved within this Circuit under either the percentage of the fund or lodestar methodology, and any reduction would be against public policy as it would only discourage future class counsel from bringing similar cases.

Taking into account all the factors, a fee award (exclusive of costs) to Class Counsel of 32% of the Settlement Fund is reasonable, and should be approved.

### C.    The Fee Is Also Justified Under The Lodestar/Multiplier Method.

Application of the lodestar method confirms the reasonableness of Class Counsel's request.  Despite its criticism of the lodestar method, the Second Circuit has advised that it remains potentially useful as a "cross-check" against the percentage method.  *Goldberger*, 209 F.3d at 50.  "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized."  *Id.* (citation omitted).

Under the lodestar method, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rates, and then the court adjusts that lodestar figure by applying a multiplier "to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *23; *see also Maley*, 186 F. Supp. 2d at 370 (explaining that the lodestar "is typically enhanced by a multiplier to reflect consideration of a number of factors, including the contingent nature of success and the quality of the attorney's work") (citation omitted).  "In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."  *In re Telik*, 576 F. Supp. 2d at 590 (a multiplier of

4.65 was "well within the range awarded by courts in this Circuit and courts throughout the country") (citing *Maley*, 186 F. Supp. 2d at 369).[5]

The fee requested for these cases is more than justified under the lodestar method. Class Counsel reasonably devoted in excess of 4,300 hours to these actions, including time spent researching the facts and the law and reviewing documents produced by Defendant, drafting and revising the complaint, conducting motion practice, conferring with Plaintiffs, negotiating the Settlement, and drafting Settlement papers. Applying Class Counsel's hourly rates, which are reasonable and well within the range typically charged by similarly well qualified counsel in this District, yields a lodestar of 0.91.[6]

There is no suggestion that Class Counsel did not spend their time efficiently; on the contrary, they have factored potential inefficiencies into the lodestar. Garber Decl. ¶ 18; Carlin Decl. ¶ 47; Terrell Decl. ¶¶ 18, 24; Shelquist Decl. ¶ 11. Class Counsel's use of billing judgment recommends against any further deduction in the lodestar used for the purposes of performing a cross-check.

---

[5] *See, e.g., Zeltser v. Merrill Lynch & Co., Inc.,* No. 13-1531, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (multiplier of 5.1 "falls within the range granted by courts"); *Hernandez*, 2013 WL 1209563, at *9 (awarding lodestar multiplier of 3.8, holding it "well within the range of multipliers that have been granted by courts in this Circuit and elsewhere" and noting that "Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers.") (collecting cases); *Spicer v. Pier Sixty LLC*, No. 08-10240, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts.") (quoting *In re Telik*, 576 F. Supp. 2d at 590); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11-520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting 6.8 multiplier); *deMunecas v. Bold Food, LLC*, No. 09-440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar."); *Maley*, 186 F. Supp. 2d at 371 ("modest multiplier of 4.65 is fair and reasonable").
[6] The Supreme Court has approved the use of current hourly rates to compensate for inflation and loss of use of funds. *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989). *See also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 n. 25 (S.D.N.Y. 1998); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163-64 (S.D.N.Y. 1989) (citing cases).

Moreover, the hourly rates charged by counsel are reasonable, indeed modest, by comparison with other firms in this District.  "[T]he American Lawyer recently reported that the median billing rate for partners at many leading law firms exceeds $900/hour." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26.[7]  Not surprisingly, Class Counsel's more modest hourly rates have been approved by courts across the country.  *See, e.g., Goldemberg v. Johnson & Johnson Consumer Companies, Inc.,* No. 13-3073 (S.D.N.Y. Nov. 1, 2017) (Roman, J.), Dkt. No. 132; *Villanueva v. Wells Fargo Bank, N.A*., No. 13-5429 (S.D.N.Y. Feb. 13, 2017) (Smith, J.), Dkt. No. 116; *Bowman v. Wells Fargo Bank, N.A.,* No. 14-648 (S.D.N.Y. Feb. 13, 2017) (Smith, J.), Dkt. No. 126; *Whittenburg v. Bank of America*, N.A., No. 14-947 (S.D.N.Y. July 20, 2016) (Briccetti, J.), Dkt. No. 119; *Adler v. Bank of America, N.A.,* No. 13-4866 (S.D.N.Y. July 20, 2016) (Briccetti, J.), Dkt. No. 127; *In re HIKO Energy LLC Litigation*, No. 14-1771 (S.D.N.Y. May 9, 2016) (Briccetti, J.), Dkt. No. 93; *Reed v. Friendly's Ice Cream, LLC*, No. 15-298 (M.D. Pa. Jan. 31, 2017), Dkt. No. 105; *Yoeckel v. Marriott International, Inc.,* No. 703387/2015 (N.Y. Sup. Ct. May 3, 2017), Order and Judgment, attached as Exhibit 2 to the Garber Decl.; *St. Joseph Health System Medical Information Cases*, JCCP No. 4716 (Cal. Sup. Ct. Feb. 3, 2016), Order Granting an Award of Attorneys' Fees and Litigation Expenses, Settlement Administration Costs, and Class Representative Incentive Awards,

---

[7] *See, e.g., In re Hi-Crush Partners L.P. Securities Litig*., 2014 WL 7323417, at *14 (approving hourly billing rates ranging from $425 to $825 for attorneys); *In re Nissan Radiator/Transmission Cooler Litig*., No. 10-7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) (finding reasonable attorneys' fees based on hourly rates ranging from $750 (partner) to $650 (associate)); *Chin v. RCN Corp*., No. 08-7349, 2010 WL 3958794, at *5-6 (S.D.N.Y. Sept. 8, 2010) (approving a "blended" hourly rate of approximately $605); *In re Comverse Tech., Inc. Sec. Litig*., No. 06-1825, 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) (hourly rates up to $880 were "not extraordinary for top New York law firms"); *In re Telik*, 576 F. Supp. 2d at 589-90 (noting that hourly rates of $700-$750 for partners were consistent with the rates charged by the defense bar for similar work, and that comparable rates have been found reasonable by other courts for class action work).

attached as Exhibit 3 to the Garber Decl.

Comparing the lodestar with the requested fee yields a multiplier of 0.91. That multiplier is unquestionably within the range of multipliers found reasonable by courts in this Circuit, and is fully justified in light of the effort undertaken, the recovery achieved, the risks involved, and the efficiency with which these cases were litigated. In sum, the 0.91 multiplier sought here is reasonable and within the range approved in past cases.

### D.  The Reaction Of The Class Is Overwhelmingly Favorable

Courts give "great weight" to the reaction by members of the Class to a class action settlement. *Maley*, 186 F. Supp. 2d at 374 (citation omitted). "The court considers both the number and quality of objections when determining how a class has reacted to an attorney fee request." *In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig*., 364 F. Supp. 2d 980, 996 (D. Minn. 2005).

Here, the Class consists of millions of consumers. As directed by the Court, the Settlement Administrator disseminated class notice through targeted online advertisements; emails and/or U.S. mail to Known Class Members; and publication in *People* magazine. Only two class members objected to the fee request. This speaks to the reasonableness of the fee request. *See, e.g., In re Telik*, 576 F. Supp. 2d at 593–94 ("That only one objection [after dissemination of 54,000 copies of the class notice] to the fee request was received is powerful evidence that the requested fee is fair and reasonable."); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 912 F. Supp. 97, 103 (S.D.N.Y. 1996) (holding that an "isolated expression of opinion" should be considered "in the context of thousands of class members who have not expressed themselves similarly"); *In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig.*, 364 F. Supp. 2d at 996 ("Here, of the over 265,000 notices sent, only seven of the thirteen objections

received concern the attorney fee award"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) ("Notice of the fee request and the terms of the settlement were mailed to 300,000 class members, and only two objected.  We agree with the District Court such a low level of objection is a 'rare phenomenon.'").  Moreover, as shown in the contemporaneously-filed Plaintiffs' Response to Objections, the objections lack merit.

Thus, the "overwhelmingly positive response to date by the Class attests to the approval of the Class with respect to both the Settlement and the fee and expense application."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 2010 WL 4537550, at *29.

## III.    THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Class Counsel's fee application includes a request for reimbursement of litigation expenses that were reasonably incurred and necessary to the prosecution of this action.  *See* Garber Decl. ¶ 23; Richman Decl. ¶ 34; Golan Decl. ¶ 41; Carlin Decl. ¶ 50; Terrell Decl. ¶ 28; Shelquist Decl. ¶¶ 13-14; Goplerud Decl. ¶ 8; Simon Decl. ¶ 7; Flannery Decl. ¶ 8.  These expenses are properly recovered by counsel.  *See In re China Sunergy Sec. Litig.*, No. 07-7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'").

As set forth in detail in the declarations filed herewith, Class Counsel have incurred $130,559.52 in litigation expenses on behalf of the Class to prosecute the case.  The Court need not issue a separate award for litigation expenses, since awarding one-third of the Settlement Fund for fees and expenses is reasonable, and the precise division between the two categories is not crucial.  *See, e.g., In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices and*

*Products Liab. Litig.*, No. 09-2102, 2010 WL 3422722, at *8-9 (S.D.N.Y. Aug. 24, 2010)

(approving flat payment covering fees and expenses).

All of the expenses were reasonable and necessary to the prosecution of these actions,

and are of the type that law firms typically bill to their clients and that courts typically approve

for reimbursement.[8] Moreover, having accepted the case on contingency basis, Class Counsel

"made a concerted effort to avoid unnecessary expenses and economized where possible." *In re*

*Hi-Crush Partners L.P. Securities Litig.*, 2014 WL 7323417, at *19 ("Because the expenses here

were incurred with no guarantee of recovery, Lead Counsel had a strong incentive to keep them

at a reasonable level, and did so."); *see* Garber Decl. ¶ 23.

## IV.    PLAINTIFFS ARE ENTITLED TO THE REQUESTED SERVICE AWARD

Class Counsel respectfully request that the Court approve the payment of a service award

to Plaintiffs in the amount of $5,000 each.  "Service awards are common in class action cases

and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution

of the litigation, the risks incurred by becoming and continuing as a litigant, and any other

burdens sustained by the plaintiffs." *Sukhnandan*, 2014 WL 3778173, at *16 (awarding $10,000

to each named plaintiff) (citation omitted); *see also Viafara v. MCIZ Corp.*, No. 12 7452, 2014

WL 1777438, at *16 (S.D.N.Y. May 1, 2014) (issuing separate awards of $12,500 to named

plaintiff for each of the two settlements).

---

[8] *See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02-1484, 2007 WL 313474, at *24 (S.D.N.Y. Feb. 1, 2007) (awarding expenses for "computer research, reproduction/duplication, secretarial overtime, phone/fax/postage, messenger/overnight delivery, local transportation/meals, filing fees and attorney services") (internal quotations omitted); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *10 (awarding expenses including "consultant and expert fees, photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for service of subpoenas to witnesses, on-line research, creation of a document database, messenger service, postage and next day delivery, long distance and facsimile expenses, transportation, [and] travel"); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (same).

In examining the reasonableness of service awards, courts consider (1) the time and effort expended by the class representatives during the litigation; (2) any burdens sustained by the class representatives, including personal risk; and (3) the ultimate recovery. *See Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

Here, Plaintiffs spent considerable time and effort assisting the prosecution of the actions on behalf of the Class. Plaintiffs demonstrated an understanding of both the basis of the claims and the role of Class representatives. Garber Decl. ¶ 11. They conferred with Class Counsel concerning the status of the case, the Complaint and amendments thereto, and the Settlement. *Id.* *See also* Richman Decl. ¶ 13; Carlin Decl. ¶ 51. Defendant has agreed not to contest the service award requested.

The requested payments are well deserved and fall well within the range of incentive awards approved in prior cases. *Yuzary v. HSBC Bank USA*, N.A., No. 12-3693, 2013 WL 5492998, at *12 (S.D.N.Y. Oct. 2, 2013) (awarding $10,000 each to named plaintiffs); *Guippone v. BH S & B Holdings, LLC*, No. 09-1029, 2011 WL 5148650, at *8 (S.D.N.Y. Oct. 28, 2011) (awarding class representative $10,000 because he "assisted with the preparation of the complaints, provided counsel with relevant documents in their possession and assisted counsel in the investigation of his claims[, and] was deposed by defendant Holdco"); *Torres v. Gristede's Operating Corp*., No. 04-3316, 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010), *aff'd*, 519 Fed. Appx. 1 (2d Cir. 2013) (unpublished) (approving service awards of $15,000 each for 15 named plaintiffs, comprising 6.4% of the $3.5 million settlement); *Clark v. Ecolab Inc*., No. 04-4488, 2010 WL 1948198, at *6 (S.D.N.Y. May 11, 2010) (granting service awards of $10,000 to each of the seven named plaintiffs); *Polaroid*, 2007 WL 2116398, at *3 (citing *Dornberger v. Metropolitan Life Ins. Co.,* 203 F.R.D. 118 (S.D.N.Y. 2001) (noting case law supports payments

of between $2,500 and $85,000 to representative plaintiffs in class actions).  They also amount to

a mere 0.61% of the $7.35 million Settlement Fund, and are, therefore, reasonable.[9]

For these reasons, the Court should order service award payments to Plaintiffs in the

amount requested.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the request

for attorney's fees and costs and service awards in the amounts indicated.

Dated:     White Plains, New York
           November 22, 2017

FINKELSTEIN, BLANKINSHIP, FREI-
PEARSON & GARBER, LLP

By:     <u>/s/ Todd S. Garber</u>
        Todd S. Garber
        Antonino B. Roman
        445 Hamilton Ave, Suite 605
        White Plains, New York 10601
        Tel: (914) 298-3290
        tgarber@fbfglaw.com
        aroman@fbfglaw.com

---

[9] *See Asare v. Change Grp. of New York, Inc.*, No. 12-3371, 2013 WL 6144764, at *3 (S.D.N.Y. Nov. 18, 2013) (service awards totaling $16,000 or 9.6% of the $165,000 settlement); *Matheson v. T-Bone Rest., LLC*, No. 09-4214, 2011 WL 6268216, at *10 (S.D.N.Y. Dec. 13, 2011) (approving service awards of $45,000 and $5,000 for each of two named plaintiffs which totaled roughly 10% of the $495,000 fund); *Johnson v. Brennan*, No. 10-4712, 2011 WL 4357376, at *21 (S.D.N.Y. Sept. 16, 2011) (approving $10,000 service awards to four named plaintiffs from a $440,000 settlement fund); *Reyes v. Altamarea Grp., LLC*, No. 10-6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 to each three plaintiffs and a service award of $5,000 to one plaintiff, totaling $50,000, or roughly 17% of the $300,000 fund); *Reyes v. Buddha-Bar NYC*, No. 08-2494, 2009 WL 5841177, at *5 (S.D.N.Y. May 28, 2009) (awarding payments of $7,500 to three named plaintiffs from $710,000 fund); *Wright v. Stern*, 553 F. Supp. 2d 337, 342 (S.D.N.Y. 2008) (approving $50,000 awards to each of 11 named plaintiffs in $11.8 million employment discrimination settlement).

Kim E. Richman
**RICHMAN LAW GROUP**
81 Prospect Street
Brooklyn, NY 11201
Telephone: (212) 687-8291
krichman@richmanlawgroup.com

Nicholas A. Carlin
**PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP**
39 Mesa Street, Suite 201 - The Presidio
San Francisco, CA 94129
Telephone: (415)-398-0900
nac@phillaw.com

Yvette Golan
**THE GOLAN FIRM**
1712 N Street NW, Suite 302
Washington, DC 20003
Telephone: (866) 298-4150 (Ext. 101)
ygolan@tgfirm.com

Beth Ellen Terrell
**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, WA 98103
Telephone: (206) 816-6603
bterrell@terrellmarshall.com

Robert K. Shelquist
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401
Telephone: (612) 339-6900
rkshelquist@locklaw.com

*Attorneys for Plaintiffs and the Settlement Class*