**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
| --- | --- |
| IN RE: HONEST MARKETING LITIGATION | Civil Action No. 16-cv-01125 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
THE OBJECTIONS OF KATHRYN A. WERNOW, CAROLINE TUCKER, AND
MONICA AUFRECHT TO FINAL APPROVAL OF THE
<u>PROPOSED CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………...ii

INTRODUCTION………………………………………………………………...1

BACKGROUND………………………………………………………………….3

ARGUMENT……………………………………………………………………...7

I.     The Practice Changes Provided For In The
       Settlement Agreement Are Appropriate Under The Circumstances………………………7

       A.     Honest's Ability To Use Similar Phrases
              Does Not Undermine The Practice Changes Relief………………………………7

       B.     Trademark Cancellation Was Never Part Of This Case………………………….8

II.    The Court-Ordered Claims Process Is Not Burdensome…………………………………...9

III.   Objectors Have Sufficient Time To Assess
       And Object To Class Counsel's Fee Request…………………………………………10

IV.    The Payment Structure Is Proportional, Fair, And Reasonable………………….………12

V.     The $5,000 Incentive Awards Are Fair And
       Reasonable And In Accordance With Awards
       Approved By The Second Circuit In Similar Cases……………………………………...13

VI.    Class Counsel's Fee Request Is Reasonable……………………………………………..14

       A.     The Agreed Upon Attorneys' Fees Are
              Within the Parameters of Similar Settlements…………………………………...14

       B.     The Second Circuit Bases Awards Of Attorneys' Fees On The Entire Fund……16

VII.   Class Counsel Spent Significant Time and
       Resources Investigating And  Discovering Information Relevant To This Case………...17

VIII.  Disbursement Of Residual Settlement Funds To The State Is Fair And Reasonable……...17

IX.    Objector Aufrecht's "Objection" Is Not Actually An Objection………………………...20

X.     Objector Tucker And Her Attorney Are Serial
       Professional Objectors Whose Objections Should Be Given Less Weight……………...20

CONCLUSION……………………………………………………………………22

**Cases**

*Anwar v. Fairfield Greenwich Ltd.,*
  No. 09-118, 2012 WL 1981505 (S.D.N.Y. June 1, 2012)........................................................ 14

*Barnes v. FleetBoston Fin. Corp.,*
  No. 01–10395, 2006 WL 6916834 (D. Mass. Aug. 22, 2006) ................................................ 20

*Carlson v. Xerox Corp.,*
  355 F. App'x 523 (2d Cir. 2009) ...................................................................................... 10, 11

*Cassese v. Williams,*
  503 F. App'x 55 (2d Cir. 2012) ........................................................................................ 10, 11

*Charron v. Pinnacle Grp. N.Y. LLC,*
  874 F. Supp. 2d 179 (S.D.N.Y. 2012) ...................................................................................... 9

*City of Providence v. Aeropostale, Inc.,*
  No. 11-7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..................................................... 20

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001) ....................................................................................................... 8

*Dennis v. Kellogg Co.,*
  No. 09-1786, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ................................................... 22

*Gascho v. Global Fitness Holdings, LLC,*
  No. 11-436, 2014 WL 1350509 (S.D. Ohio Apr. 4, 2014) ...................................................... 11

*Gilliam v. Addicts Rehab. Ctr. Fund,*
  No. 05-3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ..................................................... 14

*Hashw v. Dep't Stores Nat'l Bank,*
  182 F. Supp. 3d 935 (D. Minn. 2016) ..................................................................................... 21

*Henry v. Little Mint, Inc.,*
  No. 12-3996, 2014 WL 2199427 (S.D.N.Y. May 23, 2014) .................................................... 13

*Houck on behalf of United States v. Folding Carton Admin. Comm.,*
  881 F.2d 494 (7th Cir.1989) ................................................................................................... 18

*In re Holocaust Victim Assets Litig.,*
  311 F. Supp. 2d 407 (E.D.N.Y. 2004) .................................................................................... 18

*In re Law Office of Jonathan E. Fortman, LLC,*
  No. 13-42, 2013 WL 414476 (E.D. Mo. Feb. 1, 2013) ........................................... 22

*In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.,*
  847 F.3d 619 (8th Cir. 2017) ..................................................................... 16

*In re Motor Fuel Temperature Sales Practices Litig.,*
  No. 07-1840, 2015 WL 5010048 (D. Kan. Aug. 21, 2015) ...................................... 11

*In re UnitedHealth Group Inc. PSLRA Litig.,*
  643 F. Supp. 2d 1107 (D. Minn. 2009) .......................................................... 21

*In re "Agent Orange" Prod. Liab. Litig.,*
  611 F. Supp. 1396 (E.D.N.Y. 1985) ............................................................. 18

*Initial Pub. Offering Sec. Litig.,*
  728 F.2d 289 (S.D.N.Y. 2010) ................................................................... 20

*Karic v. Major Auto. Companies, Inc.,*
  No. 09-5708, 2015 WL 9433847 (E.D.N.Y. Dec. 22, 2015) ...................................... 9

*Khait v. Whirlpool Corp.,*
  No. 06-6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ...................................... 13

*Klein v. Robert's American Gourmet Food, Inc.,*
  28 A.D.3d 63, 808 N.Y.S.2d 766 (2d Dept. 2006) .............................................. 18

*Marisol A. ex rel. Forbes v. Giuliani,*
  185 F.R.D. 152 (S.D.N.Y. 1999) ................................................................. 9

*Masters v. Wilhelmina Model Agency, Inc.,*
  473 F.3d 423 (2d Cir. 2007) ................................................................ 16, 17

*Meredith Corp. v. SESAC, LLC,*
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) ............................................................. 9

*Michael v. The Honest Co., Inc.,*
  No. 15-7059, 2016 WL 8902574 (C.D. Cal. Dec. 6, 2016) ....................................... 7

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,*
  No. 06-4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...................................... 14

*Pappas v. Naked Juice Co of Glendora, Inc.,*
  No. 11-8276, 2014 WL 12382279 (C.D. Cal. Jan. 2, 2014) ...................................... 13

*Saccoccio v. JP Morgan Chase Bank, N.A.,*
  297 F.R.D. 683 (S.D. Fla. 2014) ......................................................... 11

*Sewell v. Bovis Lend Lease, Inc.,*
  No. 09-6548, 2012 WL 1320124 (S.D.N.Y. Apr.16, 2012) ....................... 13

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) ............................................................ 16

*TBK Partners, Ltd. v. Western Union Corp.,*
  675 F.2d 456 (2d Cir. 1982) .............................................................. 8

*Torres v. Bank of Am. (In re Checking Account),*
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) .......................................... 20, 21

*Torres v. Gristede's Operating Corp.,*
  No. 04-3316, 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ..................... 13

*Toure v. Amerigroup Corp.,*
  No. 10-5391, 2012 WL 3240461 (E.D.N.Y. Aug.6, 2012) ....................... 13

*Van Gemert v. Boeing Co.,*
  739 F.2d 730 (2d Cir. 1984) ............................................................ 18

*W. Va. v. Chas. Pfizer & Co.,*
  314 F. Supp. 710 (S.D.N.Y. 1970) .................................................... 18

*Willix v. Healthfirst, Inc.,*
  No. 07-1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ....................... 13

*Zeltser v. Merrill Lynch & Co.,*
  No. 13-1531, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ..................... 14

**Statutes**

28 U.S.C. §§ 2041, 2042 .................................................................. 18

**Rules**

Fed. R. Civ. P. 23(h)(1) ................................................................... 10

Plaintiffs Rose Marcotrigiano ("Marcotrigiano"), Aviva Kellman ("Kellman"), Julie Hedges ("Hedges"), Dreama Hembree ("Hembree"), Candace Hiddlestone ("Hiddlestone"), Ethel Lung ("Lung"), Shane Michael ("Michael"), Jonathan D. Rubin ("Rubin"), and Stavroula Da Silva ("Da Silva") (collectively, "Plaintiffs"), individually and on behalf of the proposed class (the "Class"), submit this Memorandum of Law in opposition to the objections of Kathryn A. Wernow ("Wernow Obj."), Caroline Tucker ("Tucker Obj.", Dkt. No. 72), and Monica Aufrecht ("Aufrecht Obj.") to final approval of Plaintiffs' Settlement (the "Settlement Agreement") with Defendant The Honest Company, Inc. ("Defendant" or "Honest") (Plaintiffs and Defendant, collectively, the "Parties") in the above-captioned action (the "Litigation").

## INTRODUCTION

After aggressively prosecuting the Litigation, the Parties executed a Settlement Agreement providing for a $7,350,000 non-reversionary common fund (the "Settlement Fund") and substantial injunctive relief. This significant result, obtained despite several obstacles and a long path to recovery, is a credit to the skill, tenacity, and effective advocacy of Class Counsel, who prosecuted the Litigation on a fully contingent fee basis against highly skilled defense counsel. Indeed, the Settlement Agreement compares favorably to those recently approved by the Court in *Vincent et al. v. People Against Dirty, PBC et al.*, No. 16-6936 (S.D.N.Y.) ("*People Against Dirty*") and *Goldemberg v. Johnson & Johnson Consumer Co., Inc.*, No. 13-3073 (S.D.N.Y.) ("*Johnson & Johnson*"), which are similar consumer class actions alleging, *inter alia*, deceptive use of the term "Natural."

Nonetheless, three objectors – Kathryn A. Wernow, Caroline Tucker, and Monica Aufrecht (the "Objectors") – seek to derail the Settlement, which encompasses more than 161,000 Class members who have submitted claims evidencing their approval. The Objectors

1

argue (i) that the Settlement is unfair because the practice changes set forth in the Settlement Agreement should be enhanced to include, *inter alia*, cancelation of Honest's federally registered trademarks; (ii) that the claims period was too short and the streamlined claims process was supposedly too burdensome; (iii) that the objectors have insufficient time to review Class Counsel's fee request, although they were aware that an amount of up to one-third of the recovery can be requested under the Settlement Agreement; (iv) that the payment structure for Settlement payments to Class members is not proportional enough; (v) that the $5,000 incentive awards to the nine Class Representatives is too high; (vi) that the percentage of the Settlement fund that Class Counsel will seek in fees is unreasonably high; (vii) that the Settlement is flawed because of a lack of diligence and discovery by Class Counsel; (viii) that the residual payment scheme for uncashed checks is inappropriate; and (ix) that (in the case of Ms. Aufrecht's objection) Honest should not have been sued in the first place.

None of the objections have merit. As outlined below, (i) the changes in Honest's practices required by the Settlement Agreement are fair and appropriate under the circumstances and adequately addresses the issues raised in this Action; (ii) the claims process, as approved by the Court, is fair and reasonable; (iii) the objectors have more than sufficient time to review and object to Class Counsel's fee request; (iv) the payment structure to Class members is fair and appropriate; (v) the $5,000 incentive awards are fair and reasonable and in accordance with awards approved by the Second Circuit; (vi) Class Counsel's fee request and method of calculation are in accordance with the law and practice of the Second Circuit; (vii) Class Counsel was extremely diligent in pursuing the best possible outcome for the Class; (viii) the proposed residual payment scheme is reasonable and appropriate; and (ix) Ms. Aufrecht's objection should be overruled because it is not an objection to the Settlement, but a statement of disagreement

with the basis for the lawsuit.  In addition, Ms. Tucker and her attorney, Stephen D. Field, are serial professional objectors to class settlements.  Ms. Tucker's attorney recently raised many of the same objections in *Johnson & Johnson*, where the Court overruled the objections and noted that the objectors were "serial professional objectors to class settlements, raising serious concerns about the legitimacy of both their arguments and their motives."  *Johnson & Johnson*, No. 13-0373 (S.D.N.Y. Nov. 1, 2017), Dkt. No. 132 (Order & Judgment) at 6, ¶ 13.

Because the objections do not support rejection of the Settlement or the fee request, this Court should grant Class Counsel's motions for final approval of class action settlement and for attorneys' fees, expenses, and service award payments.

## BACKGROUND

As outlined more fully in Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement ("Final Approval Brief," filed herewith) and Memorandum of Law in Support of Motion for Attorneys' Fees, Expenses, and Service Award Payments ("Fee Brief," filed herewith), Plaintiffs allege – and Defendant denies – that Defendant falsely labels, markets, and advertises its personal care products (the "Covered Products" as defined in Exhibit I of the Settlement Agreement, Dkt. No. 59-10) as "natural," "all natural," "naturally derived," "plant-based," and/or as containing "no harsh chemicals, ever!"  Plaintiffs also allege that Defendant falsely advertised and marketed its sunscreen as "effective" when it was not. Plaintiffs further allege that as a result of seeing these false and misleading representations, Plaintiffs and consumers bought the Covered Products, paid more for them than they would absent the wrongful conduct, and have been damaged as a result of the wrongful conduct. Defendant denies the above allegations and asserts that it has not violated any laws and has no liability to Plaintiffs.

For nearly two years, litigation was hard-fought, involving multiple lawsuits in both state and federal courts. The Parties fully briefed Defendant's multiple motions to dismiss, Defendant's motion to compel arbitration, and had begun discovery. The Parties eventually executed a Settlement Agreement and Release (the "Settlement Agreement," Dkt. No. 59-1), pursuant to which Defendant will establish a non-reversionary Settlement Fund in the amount of $7,350,000.00.

Although Plaintiffs' demand for injunctive relief was dismissed in the present case and in *Michael et al. v. The Honest Co.,* No. 15-7059 (C.D. Cal.), Defendant also agreed to change labeling practices for the Covered Products. It agreed to cease labeling the Products as "all natural" or "100% natural." *See* Settlement Agreement at 7, § 2.1(a). It also agreed to not place on labels for the Products the phrase "no harsh chemicals, ever!" if the Products contain more than an incidental amount of Methylisothiazolinone or Cocamidopropylamine oxide. *See id.* at 7, § 2.1(b). Morever, for product labels using the terms "natural," "naturally derived," "plant-based," and "plant-derived," it agreed to define those terms on its website in reference to the Product's bio-content as either meeting the standards specified by the U.S. Department of Agriculture's "biobased" certification program or being based on regulatory or statutory definitions, and to include in the labels, space permitting and where appropriate, the URL to its website. *See id.* at 7, § 2.1(c).

Pursuant to the Settlement Agreement, a Class member would be eligible to receive $2.50 for each purchase (up to 10 without proof of purchase), with the final amount paid to individual claimants dependent upon the total amount of valid claims made. *See id.* at 9, § 2.2(f). Defendant also agreed to take no position on an application by Plaintiffs' counsel to the Court for an award of fees and costs up to one-third of the Settlement Fund and for service awards to

Plaintiffs of $5,000 for the time and effort they spent representing the Settlement Class. *See id.* at 9-10, §§ 2.3-2-4.

On July 10, 2017, the Court preliminarily approved the Settlement Agreement, certified the Class, and directed the dissemination of class notice. *See* Preliminary Approval Order, Dkt. No. 70. Pursuant to the Preliminary Approval Order, the deadline for objections was October 23, 2017. *Id.* at 3, ¶ 4.

Pursuant to the Preliminary Approval Order, the Settlement Administrator created a settlement website (http://www.thcmarketingsettlement.com) which contains general information about the Settlement, including important dates and deadlines, and copies of important documents, including the Long Form Notice, Claim Form, Order Granting Preliminarily Approval of Class Action Settlement, Settlement Agreement and Release, and the operative complaints in each of the four actions covered by the Settlement Agreement, and provides the contact information for the Settlement Administrator and a claims form submission portal. *See* Declaration of Settlement Administrator Denise Earle ("Earle Decl.") ¶ 11. The Long Form Notice provided a detailed description of the Settlement, the requests by Class Counsel and Plaintiffs for attorneys' fees, expenses, and service award payments, and Class members' various rights and options under the Settlement. *See id.*, Exhibit F (Long Form Notice). The Settlement Administrator also set up a toll-free number through which potential Class members could obtain information. *See* Earle Decl. ¶ 14.

The Settlement Administrator sent direct Email Notice to Class members who purchased Products from Honest's website and were on the "Known Class Member List" as defined in the Settlement Agreement. *See id.* ¶ 9. As of November 21, 2017, a total of 1,311,222 Email Notices were sent without returning undeliverable. *See id.* ¶ 8. The Email Notice summarized

the proposed Settlement terms, provided the web address of the Settlement Website, provided a unique Claim Member Identification Number, provided hyperlinks to the list of Covered Products and a pre-populated Claim Form based on that Class member's purchases on Honest.com, and provided an email and mailing address for the Settlement Administrator. *See id.* (Exhibit D).

The Settlement Administrator also mailed notice by U.S. Mail to potential Class members who had a facially valid mailing address and to whom Email Notice returned undeliverable. *See id.* ¶ 9. As of November 21, 2017, 113,534 notices were mailed without returning undeliverable. *See id.* The U.S. Mail Notice was identical to the Email Notice except that, instead of providing hyperlinks to the Claim Form and Product List, it provided the web address for the Settlement Administrator. *See id.* ¶ 8 (Exhibit E).

The Settlement Administrator also published the Notice in *People* magazine and ran an online banner ad campaign to notify potential members of the Class of the Settlement and direct them to the Settlement website and toll-free number. *See id.* ¶¶ 6-7 (Exhibits B and C). Based on the results of the banner ad campaign alone, the notice campaign reached 73.18% of the Settlement Class. *See id.* ¶ 10.

As of November 21, 2017, the Settlement Administrator has received over 161,000 claim form submissions. *See id.* ¶ 15. Of the estimated millions of potential Class members notified of the Settlement, only 20 timely opted out of the Settlement, and only three objected. *See id.* ¶¶ 17-18.

For the reasons explained below, the objections to the Settlement are without merit.

<u>**ARGUMENT**</u>

**I.      The Practice Changes Provided For In The Settlement Agreement Are Appropriate Under The Circumstances**

As stated above, pursuant to the Settlement Agreement, Honest agreed to change certain labeling practices at the heart of this litigation.  Class Counsel was able to achieve this significant relief despite the dismissal of Plaintiffs' claims for injunctive relief for lack of standing.  *See* Dkt. No.39; *Michael v. The Honest Co., Inc.*, No. 15-7059, 2016 WL 8902574, at *11-13 (C.D. Cal. Dec. 6, 2016).[1]  Nonetheless, Objector Wernow argues that this bargained-for relief makes the Settlement unfair or unreasonable.

**A.      Honest's Ability To Use Similar Phrases Does Not Undermine The Practice Changes Relief**

Objector Wernow first argues that the injunctive relief is inadequate because Defendant could hire a "crafty marketer" and select other phrases like "wholly natural" or "completely natural."  Wernow Obj. at 3-4.  This misses the point of injunctive relief.  The relief enjoins the words and phrases *actually* used by Defendant on the Products and challenged by Plaintiffs.  It is outside the scope of this lawsuit to set the parameters of all of Honest's marketing.  If Honest chooses to risk more class action litigation by using new nomenclature in a false or misleading way, it will eventually pay the price for doing so.  Tellingly, Wernow does not present an alternative, but asks the Court only to "enhance the injunctive relief aspect of this settlement." *Id.* at 4.  The Court has no reason to disturb the bargained for relief.

---

[1] The other two cases covered by the Settlement Agreement had yet to proceed to the motion to dismiss phase:  Defendant had moved to compel arbitration in *Hiddlestone v. The Honest Co., Inc.,* No. 16-7054 (C.D. Cal.), and had appealed the denial of the same motion in *Kellman v. The Honest Co., Inc.,* No. RG16813421 (Cal. Super. Ct., Alameda Cty.).

**B.      Trademark Cancellation Was Never Part Of This Case**

Objector Wernow argues that Plaintiffs should have sought to cancel Defendant's many registered Trademarks, and disgorgement of the profits Honest has derived therefrom should be part of this settlement. Wernow Obj. at 4-8. That is, Wernow complains that Plaintiffs should have convinced Defendant to change its name from "Honest." Such a claim was never part of any of the lawsuits that the Settlement Agreement settles. It is doubtful that such a claim is even covered under the Section 1.10 Class Released Claims, and even if it were, Ms. Wernow could have opted out to pursue those claims, but failed to do so. Moreover, since the Class Period is already over (the last date was the date of Preliminary Approval), and Ms. Wernow contends that Honest is continuing to abuse its trademark, she is free to seek to cancel Honest's trademark now based on the ongoing conduct if she so wishes.

In any event, this Settlement need not resolve every possible legal claim an individual might have against Defendant, but need only reasonably and fairly resolve the claims presented in this litigation. *See TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982) (affirming settlement of consolidated shareholders in derivative action objecting to pending merger, holding the settlement was fair even if it "prevent[s] class members from subsequently asserting claims relying on a legal theory different from that relied upon in the class action complaint but depending upon the very same set of facts.").

Moreover, the Settlement need not obtain every dollar and every remedy that might be recoverable. The standard is instead one of *reasonableness*, and the small number of objectors attests to the reasonableness of the Settlement. *See, e.g., D'Amato v. Deutsche Bank,* 236 F.3d 78, 86 (2d Cir. 2001) (holding that although bank could withstand a higher judgment in class action brought by groups persecuted by Nazi regime, it was reasonable given that, of 27,883

notices sent out, only twenty-seven opted out and only eighteen objected); *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 163 (S.D.N.Y. 1999), *aff'd sub nom. Joel A. v. Giuliani,* 218 F.3d 132 (2d Cir. 2000) ("the Court views the small number of comments from a plaintiff class of over 100,000 children as evidence of the Settlement Agreements' fairness, reasonableness, and adequacy."). *See also Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 665–66 (S.D.N.Y. 2015) ("The adequacy of the amount achieved in settlement is not to be judged "in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.").

## II.     The Court-Ordered Claims Process Is Not Burdensome

Objector Wernow argues that the claims process is unduly burdensome and the 105-day period to make a claim is too short.  Wernow Obj. at 8, 12.  In arguing that the process is burdensome, Ms. Wernow incorrectly states that the claim process requires Class members to mail receipts or credit card statements.  *Id.* at 12.  In fact, receipts are required only if a Class member claims more than 10 products were purchased in a retail store, and there is no mail requirement.  Settlement Agreement at 9, ¶ 2.2(f), at 13-14, ¶ 5.1.

The 105-day claims period is not too short.  "Courts have held that opt out periods of less than 45 days satisfy due process, even where unsophisticated class members must make decisions regarding complex issues of law or fact."  *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 193 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013).  *See also Karic v. Major Auto. Companies, Inc.,* No. 09-5708, 2015 WL 9433847, at *4 (E.D.N.Y. Dec. 22, 2015), *report and recommendation adopted sub nom. Karic v. The Major Auto. Companies, Inc.,* No. 09-5708, 2016 WL 323673 (E.D.N.Y. Jan. 26, 2016) (preliminarily

approving settlement giving class members 60 days to return a claim form, object, or opt out of settlement), *settlement approved*, 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016).

Ms. Wernow's prediction that the response rate is likely to be "abysmally low" has been refuted by the Class members themselves. The Court already ordered the claims process to proceed in its preliminary approval order, and over 161,000 individuals have availed themselves of it. Dkt. No.70; Earle Decl. ¶ 15. The fact that over 161,000 Class members were able to successfully submit claims within the claims period belies Ms. Wernow's claim that the claims process was "onerous and burdensome."

### III. Objectors Have Sufficient Time To Assess And Object To Class Counsel's Fee Request

The Settlement Agreement provides that Class Counsel may seek no more than one-third of the maximum settlement amount, or $2.45 million, in fees and costs. Settlement Agreement at 9, ¶ 2.4. Additionally, Class Counsel will file their request for fees and costs within 14 days before the Response Deadline. Settlement Agreement at 9, ¶ 2.4.

The Settlement Agreement gives Objectors sufficient notice of the information needed to object to the fee request. Nonetheless, Objectors Wernow and Tucker argue that it is procedurally unfair for objections to be due before Class Counsel's fee *motion* is due. Wernow Obj. at 8; Tucker Obj. at 2-3. However, this is not the law. Class Counsel may file a motion for an award of attorneys' fees and expenses after the deadline for objections and satisfy the requirements of Fed. R. Civ. P. 23(h)(1). *See Cassese v. Williams*, 503 F. App'x 55, 57-58 (2d Cir. 2012) (holding Rule 23 was satisfied where settlement permitted post-objection fee motion for up to $3.9 million in fees and $50,000 in expenses). *See also Carlson v. Xerox Corp.*, 355 F. App'x 523, 525 n. 1 (2d Cir. 2009) (holding Rule 23 was satisfied where settlement permitted

post-objection fee motion for up to 20% the settlement fund and up to $5 million in expenses).[2]

In *Cassese* and *Carlson*, the Second Circuit approved settlements where, as here, (i) the notice provided the total settlement amount and maximum amount that class counsel would seek in attorneys' fees and expenses, and (ii) class members could object to any aspect of the proposed settlement prior to the fairness hearing. *See Cassese*, 503 F. App'x at 57-58; *Carlson*, 355 F. App'x at 525 n. 1; Earle Decl., Exhibit F (Long Form Notice).

Accordingly, potential objectors to the Settlement are not prejudiced by filing their objection prior to Class Counsel's motion for attorneys' fees and expenses. Having the fee motion itself would not affect their objections to the amount of the fee request: objectors have no right to inspect class counsel's books or billing records. *Cassese*, 503 F. App'x at 58.

Moreover, as in *Cassesse*, objectors will have two weeks to review Class Counsel's motion and request further information before attending the fairness hearing. Dkt. No. 70 ¶ 13; *Cassese*, 503 F. App'x at 58 (approving settlement that permitted fee motion to be filed two weeks before final hearing, reasoning objectors had "two weeks to crystallize their objections and request further information before attending the fairness hearing"). Objectors may even file reply papers prior to the fairness hearing.

---

[2] *See also In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-1840, 2015 WL 5010048, at *27 (D. Kan. Aug. 21, 2015) (holding that "the general notice to class members provided sufficient information regarding attorney's fees to allow class members a fair opportunity to lodge general objections to the settlements and fee request" where fee request was filed "[t]wo months after objections were due and 11 days before the settlement fairness hearing"), *aff'd*, 868 F.3d 1122 (10th Cir. 2017); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 699 (S.D. Fla. 2014) (citing *Cassese* and overruling objection to final approval of class settlement under same circumstances); *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 221-22 (E.D. Pa. 2014) (holding notice of fee request reasonable even though motion filed after objections due); *Gascho v. Global Fitness Holdings, LLC*, No. 11-436, 2014 WL 1350509, at *32 (S.D. Ohio Apr. 4, 2014) (holding class notice provided information regarding potential for attorneys' fees and opportunity to object and appear and fairness hearing).

In *Johnson & Johnson*, Objector Tucker's attorney, Mr. Field made an identical argument and the Court soundly rejected it, stating, "the Objectors had more than sufficient time to review and object to Class Counsel's fee request." *Johnson & Johnson*, No. 13-3073 (S.D.N.Y. Nov. 1, 2017), Dkt. No. 132, at 6, ¶ 13. This Court should do the same.

## IV. The Payment Structure Is Proportional, Fair, And Reasonable

For purchases made through Defendant's website, Class members may claim $2.50 per purchase for an unlimited number of purchases. Settlement Agreement at 9, ¶ 2.2(f), 13, ¶ 5.1(a). For purchases made at a retail store, Class members may claim $2.50 per purchase for up to 10 purchases, and may claim $2.50 for an unlimited number of purchases with proof of purchase. Settlement Agreement at 9, ¶ 2.2(f). The final amount paid to individual claimants will depend upon the total amount of valid claims made. *See* Settlement Agreement at 18, ¶ 8.2.

Objector Wernow complains that this proportional payment structure is not proportional enough. Wernow Obj. at 10. Tellingly, Ms. Wernow does not suggest a concrete alternative or provide a reasoned explanation for why this structure is not as "precisely tailor[ed]" as she would like. Indeed, she admits that "of course each individual absent class member's recovery can be rounded off in order to arrive at a workable system," but fails to articulate why the Parties' negotiated structure "falls short of Due Process." *Id.*

The Court preliminarily approved this allocation as fair and reasonable. Dkt. No. 70. The structure envisioned in the Settlement Agreement strikes the right balance between proof, proportionality, and the realities of a settlement that over 161,000 customers have decided to partake in. There is nothing unreasonable about a structure which pays more to those who purchased more products and provides a check against large claims made without documentary evidence. *See, e.g., Johnson & Johnson,* No. 13-3073 (S.D.N.Y. Nov. 1, 2017), Dkt. No.110-1

(Settlement Agreement at 18), Dkt. No. 132, at 6, ¶ 13 (approving settlement where consumer lacking a receipt could claim up to 20 purchases, but could claim an unlimited number of purchases with a receipt); *Pappas v. Naked Juice Co of Glendora, Inc.*, No. 11-8276, 2014 WL 12382279, at *3 (C.D. Cal. Jan. 2, 2014) (approving settlement agreement in false advertising case where class members who did not have proof of purchase could only receive up to $45).

## V. The $5,000 Incentive Awards Are Fair And Reasonable And In Accordance With Awards Approved By The Second Circuit In Similar Cases

Ms. Wernow objects that the $5,000 requested Incentive Award for each of the nine Class Representatives is "very large as a proportion of the total settlement." In fact, the total Incentive Awards account for only 0.6% of the Maximum Settlement Award and is less than or equal to awards made in similar cases in this District recently. *See Henry v. Little Mint, Inc.*, No. 12-3996, 2014 WL 2199427, at *10 (S.D.N.Y. May 23, 2014) (approving service payments of $10,000 equaling 0.86% of the total settlement fund); *Toure v. Amerigroup Corp.,* No. 10-5391, 2012 WL 3240461, at *5 (E.D.N.Y. Aug.6, 2012) (approving service awards of $10,000 and $5,000, totaling 1.12% of the total settlement fund); *Sewell v. Bovis Lend Lease, Inc.,* No. 09-6548, 2012 WL 1320124, at *14–15 (S.D.N.Y. Apr.16, 2012) (finding reasonable and approving service awards of $15,000 and $10,000, totaling 0.99% of the total settlement fund); *Willix v. Healthfirst, Inc.,* No. 07-1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000, and $7,500, totaling 0.68% of the total settlement fund); *Torres v. Gristede's Operating Corp.,* No. 04-3316, 2010 WL 5507892, at *8 (S.D.N.Y. Dec. 21, 2010), *aff'd,* 519 F. App'x 1 (2d Cir. 2013) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); *Khait v. Whirlpool Corp.,* No. 06-6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving service awards of $15,000 and $10,000, totaling 1.89% of the total settlement fund).

As explained further in various declarations in support of the final approval motion, Class Representatives spent significant time and resources on this case and should be rewarded for their service to the Class. *See* Garber Decl. ¶¶ 17, 22-23; Declaration of Kim E. Richman ¶¶ 32, 34; Declaration of Nicholas A. Carlin ¶¶ 48, 50; Declaration of Yvette Golan ¶¶ 39, 41; Declaration of Beth E. Terrell ¶¶ 27-28; Declaration of Robert K. Shelquist ¶¶ 12-13; Declaration of J. Barton Goplerud ¶¶ 7-8; Declaration of Leonard B. Simon ¶¶ 6-7; Declaration of Jon W. Borderud ¶ 6; Declaration of Michael J. Flannery ¶¶ 7-8.

## VI.  Class Counsel's Fee Request Is Reasonable

### A.  The Agreed Upon Attorneys' Fees Are Within the Parameters of Similar Settlements

Both Objector Wernow and Objector Tucker argue that that the Settlement is unreasonable because Class Counsel will seek attorneys' fees and expenses of one-third of the total settlement fund. *See* Wernow Obj. at 11-12; Tucker Obj. at 4-5.

However, "Class Counsel's request for one-third of the Fund is reasonable and consistent with the norms of class litigation in this circuit." *Zeltser v. Merrill Lynch & Co.*, No. 13-1531, 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) (reasoning that "relatively small claims can only be prosecuted through aggregate litigation, and … attorneys who fill the private attorney general role must be adequately compensated for their efforts."); *Anwar v. Fairfield Greenwich Ltd.*, No. 09-118, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (Marrero, J.) (granting fee petition for 33% of the settlement fund, holding it "well within the percentage range that courts within the Second Circuit have awarded in other complex litigations."); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-3452,

2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (finding one-third award to be reasonable and "consistent with the norms of class litigation in this circuit").

Plaintiffs' Fee Brief addresses each of the *Goldberger* factors and explains why Class Counsel's attorneys' fee request is reasonable under either the percentage of the fund or the lodestar method. Moreover, when expenses are deducted, the actual percentage for attorneys' fees is reduced to 31.56%, less than the one-third that is typically awarded separate and apart from expenses.

Contrary to Objector Tucker's contention that "[t]hese lawsuits have become routine, and there is nothing difficult or novel about pursuing them," Tucker Obj. at 4, this Litigation was novel – involving claims regarding sunscreen efficacy, the harshness of chemicals, the meaning of terms that are somewhat unusual in the marketplace (*e.g.,* "plant-based," "naturally derived," and "no harsh chemicals (ever!)"), and online arbitration agreements in the purchase of consumer products. Moreover, as noted above, the litigation was hard-fought by both Parties, including aggressive motion practice, substantial informal discovery, two full days of mediation before the Hon. Edward Infante and another full-day mediation before Hon. Louis M. Meisinger. Garber Dec.") ¶¶ 4, 6-9; Richman Dec. ¶ 16; Carlin Dec. ¶¶ 22, 30; Golan Dec. ¶¶ 18, 30; Terrell Dec. ¶ 16; Shelquist Dec. ¶ 8. Moreover, as outlined more fully in Plaintiffs' Fee Brief, the lodestar multiplier in this action is 0.91, confirming the reasonableness of the fee requested. *See* Plaintiffs' Fee Brief, Section II(C). *See also Johnson & Johnson,* No. 13-3073 (S.D.N.Y. Nov. 1, 2017), Dkt. No. 116 at 6, Dkt. No. 132 at 6-7 (rejecting same argument raised by Objector Tucker's attorney, holding that class counsel's requested fee of one-third the settlement fund to be reasonable, appropriate, and "in accordance with the law and practice of the Second Circuit.").

**B.       The Second Circuit Bases Awards Of Attorneys' Fees On The Entire Fund**

Objector Tucker argues that "[t]he money spent on notice or the claims administrator should not be included" in the amount on which Class Counsel's one-third fee request will be based. *See* Tucker Obj. at 4. However, the law in the Second Circuit is clear that an award of attorneys' fees is based on the entire settlement amount, not simply the amount recovered by the class. Ms. Tucker's suggested method for calculating the value of the Settlement by only counting the amount distributed to Class members has been held to be reversible error by the Second Circuit. *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-37 (2d Cir. 2007) ("In this case, the District Court calculated the percentage of the Fund on the basis of the claims made against the Fund, rather than on the entire Fund created by the efforts of counsel. We hold that this was error.").[3]

In *Johnson & Johnson*, Objector Tucker's attorney, Mr. Field, raised the same argument, using the exact same language. *See Johnson & Johnson*, No. 13-03073 (S.D.N.Y.)*,* Dkt. No. 116 at 6 ("[T]he fee award should be limited to a percentage of the settlement that it actually received by the class. The money spent on notice or the claim administrator should not be included in this calculation."). The Court rejected this argument along with the other objections made by Ms. Tucker's attorney. *Id.* at Dkt. No. 132 at 6-7; *see also Seventh Generation*, No. 14-9087 (S.D.N.Y. Jan. 26. 2017), Tr. of Fairness Hearing, attached as Exhibit 5 to the Garber Decl., at

---

[3] The Eight and Ninth Circuits similarly agree that an award of attorneys' fees is based on the entire settlement amount. *See In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 623 (8th Cir. 2017) (holding that, since the objector "[made] no showing that the administrative costs were unjustifiable, the district court did not abuse its discretion by including them as part of the benefit."); *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) ("where the defendant pays the justifiable cost of notice to the class[,] . . . it is reasonable (although certainly not required) to include that cost in a putative common fund benefiting the plaintiffs for all purposes, including the calculation of attorneys' fees.").

67:20-24 ("And then there is a complaint about the attorney's fee being too high, because the attorney's [sic] shouldn't be compensated for the amounts that are to be paid to the settlement administrator or for money paid to *cy-pres* beneficiaries. That's just wrong according to the Second Circuit. *Masters v. Wilhemina Model Agency, Inc.*, 473 F.3d 423, at 437.").

## VII. Class Counsel Spent Significant Time and Resources Investigating And Discovering Information Relevant To This Case

Objector Wernow complains that the problems she has with the Settlement are attributable to Class Counsel insufficiently investigating this case and not spending enough time on discovery. Wernow Obj. at 13. As explained and documented in Plaintiffs' Final Approval Brief and Class Counsel's Declarations, Class Counsel spent significant time and resources investigating this case and conducting discovery. The fact that Plaintiffs did not investigate matters which were unrelated to the claims at issue (*i.e.*, Trademark cancellation) is irrelevant and no basis to object to the Settlement.

## VIII. Disbursement Of Residual Settlement Funds To The State Is Fair And Reasonable

Objector Tucker argues that "the settlement is unfair, unreasonable, and inadequate . . . because unclaimed funds will go to the State rather than harmed class members." Tucker Obj. at 1. But this is a non-issue, because the Settlement Administrator anticipates the entire fund will be exhausted with the issuance of the benefits. *See* Earle Decl. ¶ 16 ("Although final claim numbers and claim administration costs are not yet final, the Settlement Administrator preliminarily projects that the entire $7.35 million settlement fund will be exhausted."). So the only funds potentially subject to reversion to the State will be those resulting from uncashed checks. *See* Settlement Agreement at p.18, § 8.4. Specifically, after the calculation of Notice and Administration costs, Attorneys' Fees, Expenses, and Incentive Awards, and any other claim, cost, or fee specified by the Settlement Agreement – the Claims Administrator will divide

the Net Settlement Amount by the Total Amount Claimed and apply a Pro Rata Multiplier such that all amounts will be distributed to the Settlement Members. *See* Settlement Agreement at 18, § 8.2.

Moreover, even if there were residual funds to be distributed, the objection is without merit as reversion to the state is the default for unclaimed funds. 28 U.S.C. §§ 2041, 2042. As the Second Circuit has held, the district court retains discretion "to control the unclaimed portion of a class action judgment fund," and may cause it to revert to the government. *Van Gemert v. Boeing Co.,* 739 F.2d 730, 735 (2d Cir. 1984). *See also Houck on behalf of United States v. Folding Carton Admin. Comm.*, 881 F.2d 494 (7th Cir.1989) (providing for reversion to the United States unless, as ultimately happened, the District Court found an appropriate use for the funds based on *cy pres*). Indeed, courts recognize that a *cy pres* type payment, rather than distribution to class members, as an adjunct to a payment by other means to some members of the class, is appropriate where the amount to be distributed to the remaining class members is small relative to the administrative costs of a direct distribution. *See In re Holocaust Victim Assets Litig.*, 311 F. Supp. 2d 407 (E.D.N.Y. 2004), *aff'd*, 424 F.3d 158 (2d Cir. 2005); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1403 (E.D.N.Y. 1985), *aff'd*, 818 F.2d 179, 181-82 (2d Cir. 1987); *W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Klein v. Robert's American Gourmet Food, Inc.*, 28 A.D.3d 63, 73-74, 808 N.Y.S.2d 766, 775 (2d Dept. 2006). Such would have been the case here.

Objector Tucker argues that the Residual Settlement Amount described in the Settlement Agreement, regardless of its size and likely constitution solely of distributed, but uncashed Settlement checks, should be "distributed to class members until it is infeasible." *See* Tucker Obj. at 2. However, redistribution is infeasible at the outset because the number of claimants is

so high.  For example, even assuming that as many 2% (an unrealistically high number in practice) of the over 161,000 claimants failed to cash their Settlement checks, there would only be $98,000 for redistribution (approximately 2% of the net Settlement proceeds), divided by the remaining 98% of the claimants, (around 158,000), leaving an additional amount per claimant of approximately $0.62, even without including the cost of administration in determining these amounts and the costs of the physical checks and mailing.

In *People v. Dirty* and in another prior consumer fraud class action, *Seventh Generation*, an objector similarly challenged the provision for *cy pres*, arguing that "only when additional distributions to class members become less than a minimum amount, *perhaps $3*, should any funds go to a third-party beneficiary."  *Seventh Generation*, No. 14-9087 (S.D.N.Y. Dec. 30, 2016), Dkt. No. 56 (Objection to Proposed Class Action Settlement) at 2-3 (emphasis added); *see also People Against Dirty*, No. 16-6936 (S.D.N.Y. Mar. 27, 2017), Dkt. No. 44 (Objection to Class Settlement at 2).  However, after considering the structure of the settlement distribution and *cy pres* process, which mirrored in substance the process in this case, *see Seventh Generation*, No. 14-9087, Dkt. No. 48-1 (Class Settlement Agreement at 23-24 (Section 4.4)), the Court rejected this argument as utterly meritless.  *See Seventh Generation*, No. 14-9087, Tr. of Fairness Hearing at 67:20-24 (S.D.N.Y. Jan. 26, 2017) ("She says that the residual fund should not be distributed to a cy-pres beneficiary until it's financially infeasible to distribute to class members.  For all the reasons that Ms. Wolchansky went through regarding the process here, how that's all going to be handled, that objection just has no merit whatsoever."), attached as Exhibit 5 to the Garber Decl.; *see also People Against Dirty*, No. 16-6936 (S.D.N.Y. June 20, 2017), Dkt. No. 55, Order Granting Final Approval of Class Action Settlement, Certifying Class,

Awarding Attorneys' Fees and Service Awards, and Final Judgment ¶ 12 (overruling objection "on the merits in its entirety").

## IX. Objector Aufrecht's "Objection" Is Not Actually An Objection

Objector Aufrecht sent a letter to the administrator stating "I am objecting to the way that Honest Company has been sued." Aufrecht Obj. However, Ms. Aufrecht's only issue with the settlement is that it settles a lawsuit she does not believe should exist. Rather than opting out, as she is free to do, Ms. Aufrecht states that she "plan[s] to apply for store credit, and never use the credit so that Honest Company may keep my settlement relief." She believes that instead of lawsuits for false advertising, "we should be supporting and helping companies be responsible and fix any mistakes." Ms. Aufrecht's belief may accurately reflect her preference, but it is not an actual objection, and should be disregarded for the purpose at hand -- whether to approve the Settlement.

## X. Objector Tucker And Her Attorney Are Serial Professional Objectors Whose Objections Should Be Given Less Weight

Unfortunately, the purpose behind Objector Tucker's objections is not the improvement of the Settlement or the best interests of the Class. Rather, Objector Tucker only seeks to gain standing to appeal if and when the objection is overruled, and then, by delaying payments to the Class and Class Counsel for the pendency of an appeal, extract a payment from Class Counsel.[4]

---

[4] *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 728 F.2d 289, 295 (S.D.N.Y. 2010) (serial/professional objectors "undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients."); *City of Providence v. Aeropostale, Inc.*, No. 11-7132, 2014 WL 1883494, at *2 (S.D.N.Y. May 9, 2014) (to same effect); *Barnes v. FleetBoston Fin. Corp.*, No. 01–10395, 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006) (goal of many objectors is to file "frivolous appeals and thereby slowing down the execution of settlements."); *Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla. 2011) ("[M]ost if not all . . . are motivated by things other than a concern for the welfare of the Settlement Class.").

Serial objectors generally interpose objections to give them standing to appeal and further delay the finalization of the settlement, in order to maximize their chances of extracting payment from the parties in order to drop (or to persuade their client to drop) their objections. *See, e.g.*, *Torres v. Bank of Am. (In re Checking Account Overdraft Litig.)*, 830 F. Supp. 2d 1330, 1361, n.30 (S.D. Fla. 2011) ("[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing.").[5] Serial objectors have been described by one court as "remoras," small fish with a sucker-like organ that attach themselves to larger fish. *In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107, 1108 (D. Minn. 2009).

Objector Tucker and her attorney are serial objectors. Ms. Tucker objected to the settlement in *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935 (D. Minn. 2016). The Court there overruled her objections, she appealed, and eventually voluntarily dismissed her appeal. Perhaps more important, Ms. Tucker's attorney, Stephen D. Field is a serial objector attorney who has filed objections to final approval this year in two similar settlements in this district.[6] In *People Against Dirty*, the court noted that Mr. Field's client simply "cut and paste[d]" objections. *See* No. 16-6936 (S.D.N.Y. May 12, 2017), Tr. of Fairness Hearing, attached as Exhibit 6 to the Garber Decl., at 18:3-5. Recently, the Court stated in its order finally approving the settlement in *Johnson & Johnson* that he and his client were "serial professional

---

[5] Should any of the Objectors attempt to appeal from an order of this Court granting final approval to the Settlement or an award of attorneys' fees, Plaintiffs will seek appeal bonds to protect against the cost of delay, and other expenses associated with what are sure to be frivolous appeals.

[6] *People Against Dirty*, No. 16-6936 (S.D.N.Y.), Dkt. No. 44; *Johnson & Johnson*, No. 13-03073 (S.D.N.Y.), Dkt. No.116.

objectors to class settlements, raising serious concerns as to the legitimacy of . . . their arguments and their motives.  Indeed, Ms. Hammack [Mr. Field's client] recently raised the [*sic*] many of the same objections before courts in the Southern District of New York, including this Court. The courts summarily rejected her objections." *Johnson & Johnson*, No. 13-3073, (S.D.N.Y. Nov. 1, 2017)*, Dkt. No. 132 at 6, ¶ 13.

Accordingly, Class Counsel believe both Objector Tucker and her attorney to be serial professional objectors, and, as such, the Court should afford less weight to her objections.  *See, e.g.*, *In re Law Office of Jonathan E. Fortman, LLC*, No. 13-42, 2013 WL 414476, at *5 (E.D. Mo. Feb. 1, 2013) ("when assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first"); *Dennis v. Kellogg Co.*, No. 09-1786, 2013 WL 6055326, at *4 n. 2 (S.D. Cal. Nov. 14, 2013) (citing *In re Law Office of Jonathan E. Fortman, LLC*).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court overrule the objections of Kathryn A. Wernow, Caroline Tucker, and Monica Aufrecht, finally approve the Settlement Agreement, certify the Class, and approve Class Counsel's request for an award of attorneys' fees, costs, and incentive awards.

Dated:  November 22, 2017          Respectfully submitted,

**FINKELSTEIN, BLANKINSHIP,
FREIPEARSON & GARBER, LLP**

/s/ Todd S. Garber
Todd S. Garber
445 Hamilton Avenue, Suite 605
White Plains, NY 10601
Telephone: (914) 298-3290
tgarber@fbfglaw.com

22

Kim E. Richman
**RICHMAN LAW GROUP**
81 Prospect Street
Brooklyn, NY 11201
Telephone: (212) 687-8291
krichman@richmanlawgroup.com

Nicholas A. Carlin
**Phillips, Erlewine, Given & Carlin, LLP**
39 Mesa Street, Suite 201 - The Presidio
San Francisco, CA 94129
Telephone: (415)-398-0900
nac@phillaw.com

Yvette Golan
**The Golan Firm**
1712 N Street NW, Suite 302
Washington, D.C. 20036
Telephone: (866) 298-4150 (Ext. 101)
ygolan@tgfirm.com

Beth Ellen Terrell
**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300
Seattle, WA 98103
Telephone: (206) 816-6603
bterrell@terrellmarshall.com

Robert K. Shelquist
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
rkshelquist@locklaw.com

*Attorneys for Plaintiffs and the Class*